624 A.2d 666

**Mary G. CLEMENTE–VOLPE, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (WESTINGHOUSE AIR BRAKE DIVISION and Travelers Insurance Company), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 20, 1992.

Decided April 7, 1993.

596

Vincent J. Morocco and Fredric E. Orlansky, for petitioner.

William Bevan III and David J. McAllister, for respondents.

Before CRAIG, President Judge, PELLEGRINI, J., and BLATT, Senior Judge.

CRAIG, President Judge.

The claimant, Mary Clemente–Volpe, appeals the determination of the Workmen's Compensation Appeal Board affirming a referee's decision granting the termination petition of the employer, Westinghouse Air Brake Division. The claimant argues that the referee erred in relying upon a surveillance film of the claimant in reaching his decision, and that the board erred in affirming the referee because both the referee's and the board's decisions contain contradictory statements that the claimant believes justifies a remand to the board for clarification. We affirm the decision of the board.

## THE RECORD

The facts as found by the referee are as follows: The claimant worked for the employer as a laborer and material handler. The referee did not make any findings of fact concerning the claimant's job requirements at the time of her injury. On August 5, 1982, the claimant suffered an acute lumbosacral sprain. On August 30, 1982, the employer issued a notice of compensation payable to the claimant for her work-related injury pursuant to the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031. Payments began on August 17, 1982.

On February 21, 1989, the employer's insurance carrier, Travelers Insurance Company, filed a termination petition on behalf of the employer, alleging that the claimant's injury had ceased approximately on February 1, 1989, and that the claimant could return to her duties without disability. The

referee scheduled a hearing on April 25, 1989, and another on August 1, 1989, which was postponed to November 7, and postponed again to January 11, 1990.

The referee heard testimony from a private investigator named Raymond Brooks who appeared on behalf of the employer. Brooks described his participation in the creation of a surveillance film of the claimant. Brooks works for an investigative firm, Inteldex, Inc., (the investigators) that contacted the claimant under the pretext of being a consumer-interest group searching for someone to participate in a shopping survey.

The investigators told the claimant that she would have to go into various grocery stores and purchase particular items with the "consumer-interest group's" money for cost-comparisons. While completing a sale, she was to take notice of the store's aisle width, cleanliness and general shopping condition. Then she was to describe her observations to one of the investigators, whom she believed was a member of the consumer-interest group. In addition, the investigators told the claimant she could keep all the items she purchased.

In reality, the shopping survey was designed to permit the investigators to film the claimant moving heavy objects. The referee described the investigators' general practice as follows:

> She shopped from the list [provided by the investigators] and gave the balance of money back ... She was then told of other products that she could have if she would come and do the work; that a pickup truck pulled up; and the [claimant] was asked to place items in her car. She stated that some of the goods were heavy, but she was told to try and to take her time. It was her opinion that she couldn't lift the case of pop, but with the sight of all those goodies she strained herself to the point where she was able to do what she was asked to do.

The record further indicates that Brooks is a certified state weigh master, and pre-weighed every item the investigators asked the claimant to lift.

The referee admitted the surveillance film into evidence and Brooks offered testimony regarding the film's contents. The referee found that:

The Claimant was contacted [by Brooks] and participated in a shopping survey on three separate days: October 27, 1988, November 9, 1988 and November 16, 1988. The Claimant was filmed by [Brooks] for six (6) hours of film and there was an edited version of the tape lasting thirty (30) minutes. The tape basically showed that on October 27, 1988, the Claimant was at Foodland on Route 22 where she did extensive bending, pushing and lifting in excessive [sic] of fifty (50) pounds. Again, on November 9, 1988, said surveillance was done at Route 66 outside of Greensburg where again the Claimant was shown lifting groceries of more than twenty (20) pounds, cases of soda fifty (50) pounds, cases of oil, and at times bending, picking up and putting into an automobile. The Claimant was also shown using a floor jack and picking up fifty (50) pounds of windshield wash as well as groceries. They again did surveillance on her on November 16, 1988 at Giant Eagle on Route 30 where she removed a tire from a car to the ground and back. She lifted five (5) cases of oil, approximately twenty-nine (29) pounds; two (2) cases of soda, forty (40) pounds each, from the car to the trunk; six (6) cases of soda; and three (3), fifty (50) pound bags were brought from the ground to the truck. She was also seen throwing and catching a football and swinging a baseball bat. [Brooks] testified that he personally did the surveillance and that on a given day, he had her under surveillance subsequent to the screening, following her on a journey into Pittsburgh. This Referee finds the testimony of Raymond Brooks to be credible and that the films portrayed the Claimant performing tasks that she had in the past alleged that she could not perform.

The referee also heard medical testimony from Dr. Joseph Novak and Dr. Richard Weisman for the employer, and Dr. S.P. Barua for the claimant. Doctors Novak and Weisman testified that the surveillance film convinced them that the

claimant could return to work without disability. Regarding Dr. Novak's testimony, the referee stated that,

Dr. Novak had examined the claimant on December 20, 1988 and had seen the x-ray films in approximately February of 1989. After the examination of December 20, 1988, the Doctor felt that the Claimant was able to return to the type of work she was performing at the time of her injury. She would be able to go back to this type of laboring work. His opinion was buttressed by his review of the films and seeing that the Claimant had performed the various duties as shown in the surveillance by Raymond Brooks. Dr. Novak was of the opinion that there was no reason why the Claimant could not return to that type of work that she was doing at the time of her injury and that all disability as a result of said injury had ceased and terminated.

However, the referee did not find Dr. Weisman credible. "The [referee] does not find the testimony of Dr. Richard A. Weisman credible inasmuch as he did not examine the Claimant after [previous cases before this referee], and only based his opinion [on] the surveillance film and not a recent medical examination." Similarly, the referee found Dr. Barua to be less credible than Dr. Novak "as far as the lack of disability in light of the surveillance film, which buttresses the testimony of the Defendant's Doctors [sic]."

Based on Brooks' and Dr. Novak's testimony, in conjunction with the surveillance film, the referee found as a fact that "all disability of the Claimant as a result of her work-related injury of August 5, 1982 ceased and terminated on February 1, 1989, which is subsequent to the review of Dr. Joseph Novak, who this Referee finds credible." Consequently, the referee terminated the claimant's benefits.

The claimant appealed the referee's decision to the board alleging that the referee erred in finding the film and Brooks' testimony credible. The board affirmed the referee, and the claimant now brings this appeal. Our scope of review in this case is limited to determining whether the referee's findings of fact are supported by substantial evidence, and whether the board or the referee violated the claimant's constitutional

rights, or committed an error of law. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

## ANALYSIS

### *Petition to Strike*

Initially, we must resolve two issues brought before us by the employer in a petition to strike portions of the claimant's reply brief. The employer requests that we strike the first eight pages of the claimant's reply brief on the grounds that the claimant has improperly included material from previous adjudications involving these parties that is not a part of the record in this proceeding. Specifically, the claimant makes reference to a termination petition filed in 1983, in *Mary G. Clemente v. WABCO–Westinghouse Air Brake Division,* referee's decision of June 8, 1984, affirmed by the board at A–8849, May 2, 1986 (the 1983 termination petition), in which the referee refused the employer's petition. The claimant seeks to introduce findings of fact from the 1983 termination proceeding to prove that Dr. Novak's testimony in the case before us is "substantially similar" to his testimony before the same referee in 1983 and was rejected as not credible, and to prove that the surveillance films in the present case do not accurately depict the type of work that the claimant did for the employer before her injury in 1982.

The claimant asserts that we cannot grant the employer's petition to strike portions of the reply brief because the Pennsylvania Supreme Court's decision in *In re Schulz Estate,* 392 Pa. 117, 139 A.2d 560 (1958), permits this court to take judicial notice of the record developed in prior proceedings in the same case whether or not the record was admitted into evidence.

However, we will not consider the 1983 findings of fact because the claimant failed to raise those matters before the board. Pennsylvania Rule of Appellate Procedure 1551 states that

> [n]o question shall be heard or considered by the court which was not raised before the government unit except (1) Questions involving the validity of a statute. (2) Questions involving the jurisdiction of the government unit over the subject matter of the adjudication. (3) Questions which the court is satisfied that the petitioner could not by the exercise of due diligence have raised before the government unit.

The facts sought to be included before us on appeal do not fall within any of the permissible categories. Nor has the claimant offered an explanation for her failure to introduce the earlier findings before the referee or the board, even though the information could have been presented without difficulty. The claimant will not be harmed if we do not take notice of the 1983 findings of fact because she described her working conditions before the referee. Therefore, we will not consider the 1983 findings of fact because the claimant has, without any justification, raised the issue for the first time here on appeal.

In addition, Dr. Novak's testimony in the 1983 termination petition is of no significance in the case before us. In 1983, the only question addressed by the doctor was whether, *in 1983*, the claimant had recovered. The ultimate question before us now is whether the claimant recovered on February 1, 1989. Whether or not the doctor was found credible in 1983 does not affect his credibility now. These are, therefore, *completely separate questions, and the claimant's attempt to rely on the 1983 proceeding is misguided.*

Nonetheless, we will not strike the first eight pages of the reply brief because it is otherwise unobjectionable once we exclude the 1983 findings of fact from our review. The remaining material in the reply brief is already contained in the claimant's brief, and is properly before us on appeal.

### The Surveillance Film

Accordingly, we may now proceed with the case before us on its merits. The claimant notes that films, without any corroborating medical testimony, are insufficient to meet the burden of proof required to terminate Workmen's Compensa-

tion benefits. However, this court has long held that films are admissible as evidence, and where they are corroborated with competent, credible medical testimony, there may be sufficient evidence to grant a termination petition. *John B. Kelly Co., Inc. v. Workmen's Compensation Appeal Board (Davis)*, 8 Pa.Commonwealth Ct. 589, 303 A.2d 255 (1973).

The claimant suggests that the referee relied solely on the surveillance film in determining that she recovered from her 1982 injury. She notes that the only credible medical witness, Dr. Novak, at first opined that the claimant was not completely recovered, but suffered from "disuse syndrome." The doctor diagnosed the claimant as recovered only after viewing the surveillance film. According to the claimant, the film was the only evidence that changed Dr. Novak's diagnosis, and Dr. Novak was the only credible medical witness to testify before the referee. Therefore, the claimant believes that the surveillance film that caused Dr. Novak to change his medical opinion is ultimately the only evidence that persuaded the referee that the claimant recovered from her 1982 injury.

We are not convinced by the claimant's argument. This court ruled in *Hartzell v. Workmen's Compensation Appeal Board (Bowen McLaughlin, York–Div.)*, 101 Pa.Commonwealth Ct. 137, 142, 515 A.2d 1009, 1012 (1986), that "the combination of a physical examination and a viewing of the videotape constitutes substantial competent evidence." The record in the case before us is replete with testimony from Dr. Novak describing the medical tests he conducted on the claimant. In addition, the record indicates that Dr. Novak concluded that the claimant recovered before he viewed the surveillance film. On direct examination, he testified as follows:

Q.: Based on your viewing of this [surveillance] videotape, did you change your opinion as to Ms. Clemente–Volpe's ability to work?

A.: I felt that Ms. Clemente–Volpe could work. In fact, I encouraged her to go to work and she told me at the last examination when she came to my office [on December 20, 1988] that she would like to work, but she couldn't find a

*job, so I didn't change my opinion at all. In fact, seeing these videotapes reinforced my idea that she could work.*

. . . .

A.: I indicated that, based on the videotapes which I reviewed, I felt that Mary Clemente–Volpe fully recovered from the injuries she sustained on August the 2nd, 1982. In my previous reports, I was careful and I said that she recovered sufficiently to return to work, but she worked so hard on these tapes that I felt that she could recover. (Emphasis added.)

Therefore, the claimant's suggestion that the doctor relied solely on the film is not supported by the evidence in the record.

Additionally, the record reveals that the referee did not rely solely on the surveillance film. In fact, as quoted above, the referee expressly found Dr. Novak's medical testimony credible, and not Dr. Weisman's, because Dr. Weisman appeared to rely solely on the film in formulating his medical opinion. Therefore, we are satisfied that the referee did not rely exclusively on the surveillance film in reaching his decision.

■ However, the claimant argues that even if the referee did not rely solely on the surveillance film, any reliance on the film in this case constitutes error because the film is not credible. The claimant objects to the referee's reliance on the surveillance film because she was tricked by the investigators into performing tasks that required lifting and bending. In addition, she claims that the filmed activities bear no resemblance to her actual work requirements, and that the film is therefore not a reliable tool for the referee to determine whether the claimant has recovered from her 1982 injury. And finally, the claimant contends that the film is inaccurate because it is silent and prevents the referee from considering her protests and complaints of pain, as well as the amount of "goading" by the investigators to assure that she lifted heavy objects.

This court has previously addressed the question of whether a film of a claimant performing activities induced by pretext

may be admitted as evidence in a workmen's compensation proceeding. In the case of *Isadore v. Workmen's Compensation Appeal Board (Owens–Illinois)*, 77 Pa. Commonwealth Ct. 346, 465 A.2d 1096 (1983), we held that films are admissible as evidence even though the employe was tricked into performing acts inconsistent with his claimed medical condition.

Mr. Isadore applied for benefits for an alleged work-related back injury that supposedly left him unable to lift heavy objects. The employer introduced testimony from a private investigator who filmed Isadore lifting items up to one hundred pounds without difficulty. The film also showed Isadore changing tires, crawling under a truck and lifting cases of antifreeze weighing sixty-two pounds. The board affirmed the referee's decision to deny benefits, and Isadore appealed to this court.

Before this court, Isadore pointed out that the surveillance films showed him engaged in activities that he was persuaded to perform for payment, and under the pretext that he was aiding a criminal investigation. He argued that the fraudulent criminal investigation created an inordinate and unreasonable risk that he might further injure himself. He felt he was particularly susceptible to the private investigator's inducements because Isadore needed money. Finally, Isadore asserted that filming was improper after litigation had commenced because the employer did not notify Isadore's counsel.

However, the rule formulated under *Isadore* is that surveillance films need not be taken with either the knowledge or consent of the claimant. Yet, the claimant here asserts the unique argument that *Isadore* does not apply to her because *Isadore* involved a petition for medical benefits where the employe had the burden of proof to establish the existence of an injury.

In our case, the claimant notes, the petition before the referee was one for termination of benefits where the burden of proof falls exclusively on the employer. The claimant contends that because the employer presented the surveillance film, the burden of proof somehow shifted to her to establish

that she remained injured. Therefore, she suggests that it is improper to allow the employer to induce her into performing acts contrary to her medical claims, and then to present films of her actions against her in a termination proceeding.

We do not agree. As discussed above, films do not create a presumption of any kind. Films are merely evidence, and if the evidence is compelling, no matter which party introduced it, the opposing party should be prepared to rebut or discredit the implications of the film. The surveillance film here merely supports the medical testimony of Dr. Novak. Therefore, because consent is not required to make surveillance films, and introducing such films does not shift the burden of proof, the referee did not err as a matter of law in considering the surveillance film.

The claimant's remaining arguments attacking the referee's reliance on the surveillance film merely assert that the referee should not have found the film credible. Of course, this court "will not determine the probative value of the evidence even if on the same record we might have reached a different result." *Id.* at 352, 465 A.2d at 1099. Therefore, because there is no legal basis to question the referee's findings of credibility, we will not disturb his judgment that the surveillance film is credible.

## *Ability to Work*

The claimant also argues that the board erred in sustaining the findings of fact made by the referee regarding the claimant's inability to work. The claimant believes that there are contradictory statements in both the referee's decision and the board's opinion sufficient to warrant a remand of this case for clarification. Specifically, the claimant draws our attention to the referee's finding of fact 11(b) wherein he found that:

> the testimony of the Claimant lacks credibility especially insofar as her inability to work. The claimant's testimony that she is unable to work further lacks credibility in light of the extended surveillance done on her for three (3) days showing that she was able to stoop, bend, lift and do various

and sundry things that her testimony stated that she was unable to do.

The claimant suggests that this finding of fact indicates that the referee incorrectly believed the claimant argued that she could not work at all. The claimant asserts that neither she, nor Dr. Barua, testified that she was unable to work. Rather, the claimant and Dr. Barua both testified that the claimant could perform some light, sedentary work. Therefore, the claimant contends that there is no basis in the record supporting the referee's finding that the claimant took the position that she was unable to work.

In addition, the claimant notes that unequivocal medical testimony that an employe may return to work despite a continuing injury is grounds for suspension of benefits, not for termination. Therefore, the claimant believes that the referee's finding of fact 11(b) is reversible error because she and Dr. Barua testified, unequivocally, that she could return to perform light duty work. Although the claimant does not argue that her benefits should be terminated or suspended, she asserts that, at most, the referee could have suspended her benefits based on the evidence in the record.

However, the claimant misunderstands the language of the referee. The referee never suggests that the claimant took the position that she was totally disabled. Instead, the referee's findings of fact indicate that he had a clear understanding of the claimant's argument that she was capable of performing only light work. We note in particular, that the referee wrote that the claimant:

> stated that she had looked for jobs on her own and at one time inquired into a business interest in the nature of a travel agency. She also stated that at no time has [the employer] ever contacted her as to a light-duty job ... The Claimant stated that in her opinion, she would be unable to return to the type of work that she was doing at the time of her injury.

Nonetheless, the referee did not find the claimant credible, but found that she could work without any restrictions on her physical activity. Therefore, finding of fact 11(b) merely

reflects the referee's opinion that the claimant's assertion that she may perform only light duty work, and not her previous job, lacks credibility.

Furthermore, a suspension of workmen's compensation benefits is appropriate only when all the credible medical evidence indicates that a claimant is suited for limited work despite a continuing injury. *USX Corp. v. Workmen's Compensation Appeal Board (Guthrie)*, 132 Pa. Commonwealth Ct. 54, 571 A.2d 1112 (1990). In the case before us, the only credible medical testimony indicates that the claimant has completely recovered and may return to work without restriction. Therefore, the proper remedy is a termination of benefits.

The claimant also notes that the referee mistakenly characterized Dr. Novak as one of her witnesses, rather than one of the employer's. She further notes that the board mistakenly stated that Dr. Weisman was found credible as well as Dr. Novak. We find that these errors are harmless. The referee expressly found the employer's medical testimony more credible as is quoted above. The referee's error in this regard could not improperly influence his decision. Nor do we believe the board's mistake tainted its conclusion. The board may affirm the referee's decision if it is based on substantial evidence, and even "a single medical expert's testimony is a reasonable basis upon which a referee may base a finding of fact despite conflicting evidence." *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board*, 132 Pa.Commonwealth Ct. 277, 282, 572 A.2d 838, 841 (1990).

## CONCLUSION

Accordingly, we must affirm the June 17, 1992 decision of the board upholding the termination of the claimant's benefits.

## ORDER

NOW, April 7, 1993, the order of the Workmen's Compensation Appeal Board, dated June 17, 1992, No. A90–1967, is affirmed.