625 A.2d 1308

**MANCINI'S BAKERY and The Standard Fire Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (LEONE), Respondent.**

**Peter LEONE, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (MANCINI'S BAKERY), Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 2, 1993.

Decided May 24, 1993.

642

Stewart A. Karn, for petitioners/respondent, Mancini's Bakery and The Standard Fire Ins. Co.

Amiel B. Caramanna Jr., for respondent/petitioner, Peter Leone.

Before DOYLE and PALLADINO, JJ., and LORD, Senior Judge.

DOYLE, Judge.

Before us are cross-appeals from an order of the Workmen's Compensation Appeal Board (Board) affirming an order of the referee which granted the claim petition of Peter Leone (Claimant) and awarded benefits under The Pennsylvania Workmen's Compensation Act (Act)[1] for the closed periods January 4, 1989 to April 9, 1989 and January 13, 1990 to January 7, 1991, but suspended benefits as of the latter date.

Claimant had been employed by Mancini's Bakery (Employer) since 1977 as a driver-salesman, a position which required him to load and unload racks of bread weighing between 25 and 30 pounds from a delivery truck and make 40 to 50 stops per day. In 1982, Claimant began to experience pain in his left knee and consulted Dr. Jack Failla. Dr. Failla conducted arthroscopic procedures on Claimant's left knee in January and April of 1983, and diagnosed Claimant as suffering from advanced degenerative osteoarthritic disease. Dr. Failla last saw Claimant in May 1983. Claimant continued to work despite his knee problems.

Claimant was again treated for knee pain in 1987 and in 1988 consulted Dr. James D'Antonio. Dr. D'Antonio first examined Claimant on October 31, 1988 and confirmed that Claimant was suffering from advanced osteoarthritis of the medial compartment of both knees and recommended that he undergo knee replacement surgery. Claimant underwent the recommended surgery on his left knee, which was more symptomatic than the right knee, on January 6, 1989. As a result of this surgery, Claimant did not work from January 4, 1989 until April 10, 1989. Then, on January 19, 1990, Claimant underwent a total replacement of his right knee; he has not worked since January 13, 1990.

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

Claimant initiated this action by filing a claim petition on November 21, 1988, alleging that, on October 31, 1988 and prior thereto, he had suffered a work-related injury to his knees and that the "[c]onstant jumping in and out of truck and constant use of the truck aggravated my knee replacements." [2] Claim petition, paragraph 5. Claimant had provided notice of his condition to Employer on October 31, 1988. Hearings were held before the referee, with Claimant presenting the testimony of Dr. D'Antonio and Employer presenting the testimony of Dr. Failla.

The referee found that Claimant suffered from a preexisting knee condition known as degenerative osteoarthritis but that the repetitive nature of his work had aggravated the condition, hastening the natural process of degeneration and requiring the knee replacements. As a result, the referee found that Claimant had been temporarily totally disabled for the closed periods January 4, 1989 to April 1989 and January 13, 1990 to January 7, 1991 when Dr. D'Antonio last examined Claimant and determined that, while Claimant should not work, he could in fact work. Accordingly, the referee suspended benefits as of the latter date.

Both parties appealed to the Board, Claimant arguing that the findings supporting the referee's suspension of his benefits were not supported by substantial evidence and Employer arguing that Claimant's petition should have been dismissed in its entirety because Claimant had not filed the petition within three years of the date of injury, nor had he given notice to Employer within 120 days of the injury as required by, respectively, Sections 315 and 311 of the Act, 77 P.S. §§ 602, 631.

The substance of Employer's argument before the Board was that Dr. Failla had told Claimant in 1983 that his knee injury was work-related and thus the three-year limitation of

2. Claimant did not have total "replacements" of his knees until 1989. We thus take this statement in the claim petition to indicate that Claimant had been informed when he was examined by Dr. D'Antonio on October 31, 1988, that his work-related activity was aggravating his osteoarthritis to the extent that he would need knee "replacements."

Section 315 and the notice period of Section 311 began to run as of that date. The Board reviewed the evidence and concluded that Dr. Failla had never told Claimant that his knee injury was work related in 1983 and that Claimant did not know of the causal relationship between his knee condition and his work until October 31, 1988 when Dr. D'Antonio informed him that his work was aggravating his preexisting condition. Thus, the Board concluded, Claimant's petition filed on November 21, 1988, within 21 days of his knowledge of the injury, was timely and that notice, provided on October 31, 1988, was also timely.

Claimant argued before the Board that benefits should not have been suspended because the medical testimony did not establish a complete release to return to work. The Board found that, although Dr. D'Antonio had some reservations concerning Claimant's return to work, Claimant was in fact able to return to work, and that the possibility or fear of reinjury is not a basis to continue compensation. These cross-appeals followed.[3]

## I. Employer's Appeal

Employer's arguments on appeal are essentially the same as those presented before the Board. Employer first argues that Claimant failed to file his claim petition within three years of the date of his injury as required by Section 315 of the Act.

Section 315 provides, in pertinent part, that "[i]n cases of personal injury all claims shall be forever barred, unless, within three years after the injury ... one of the parties shall have filed a petition...." 77 P.S. § 602. Thus, where the claim petition alleges a personal injury (as opposed to an occupational disease), for purposes of Section 315, the critical

3. Our scope of review is limited to a determination of whether constitutional rights have been violated, errors of law have been committed, or necessary findings of fact are supported by substantial evidence. *Czap v. Workmen's Compensation Appeal Board (Gunton Corp.),* 137 Pa.Commonwealth Ct. 612, 587 A.2d 49 (1991), *petition for allowance of appeal denied,* 527 Pa. 654, 593 A.2d 425 (1991).

inquiry is the date of injury. *See Berisford v. Workmen's Compensation Appeal Board (Jessop Steel Co.)*, 142 Pa.Commonwealth Ct. 83, 596 A.2d 1237 (1991).

In determining the date of injury, the Board focused on the date Claimant became aware that his condition was work-related. This is, however, the wrong inquiry because the "discovery rule" applies only to occupational disease type injuries and specific loss type injuries. *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (Feiertag)*, 90 Pa.Commonwealth Ct. 567, 496 A.2d 412 (1985); *Eddy v. Workmen's Compensation Appeal Board (Bell Transit Inc.)*, 130 Pa.Commonwealth Ct. 306, 568 A.2d 279 (1989), *petition for allowance of appeal granted*, 525 Pa. 606, 575 A.2d 570 (1990). In the instant case, the referee found that Claimant had suffered an aggravation of his preexisting knee condition, and thus we must determine when *this aggravation occurred*, and not when Claimant discovered that his knee condition was aggravated by his work.

The medical evidence presented by both parties clearly established, and the referee found, that Claimant was suffering from a preexisting condition aggravated by the requirements of his job. Each day that Claimant worked constituted a "new" injury in that it further aggravated his condition. *See Eddy; McDevitt v. Workmen's Compensation Appeal Board (Ron Davidson Chevrolet)*, 106 Pa.Commonwealth Ct. 207, 525 A.2d 1252 (1987), *petition for allowance of appeal granted*, 518 Pa. 629, 541 A.2d 1140 (1988), *appeal dismissed as improvidently granted*, 520 Pa. 119, 552 A.2d 1048 (1989); *Young v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corp.)*, 97 Pa.Commonwealth Ct. 356, 509 A.2d 945 (1986); *Divine Providence Hospital v. Workmen's Compensation Appeal Board (Bonner)*, 75 Pa.Commonwealth Ct. 565, 462 A.2d 917 (1983); *Beaver Supermarket v. Workmen's Compensation Appeal Board*, 56 Pa.Commonwealth Ct. 505, 424 A.2d 1023 (1981). Because Claimant continued to work up to

and beyond the date of his petition on November 21, 1988, and thus suffered daily aggravation of his condition even beyond the date of his petition, it is clear that the petition was timely.[4]

■ Employer's next contention is that Claimant failed to give notice of his injury in accordance with Section 311 of the Act. Section 311 provides that notice of the injury shall be given within 120 days after the occurrence of the injury, but that where the injury's "relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relation to his employment." 77 P.S. § 631.

Employer maintains that Claimant was told by Dr. Failla in 1982 that his preexisting knee condition was being aggravated by his employment and that the alleged notice on October 31, 1988 was therefore far beyond the 120–day requirement.[5] We have concluded, however, that Claimant's injury occurred not only in 1982 while he was working for Employer, but also every subsequent day of his employment. Notice within 120 days of Claimant's last day of work was, therefore, sufficient and the claim petition, received by Employer on December 8, 1988, provided notice to Employer within 120 days of the occurrence of Claimant's injury.

4. The fact that Claimant alleged in his petition that the date of injury was October 31, 1988 is of no import because it is obvious that Claimant was laboring under the same legal misconception as the Board and believed that the date of his injury was contemporaneous with the date he discovered that his condition was work-related.

5. Our review of the record discloses no evidence demonstrating that Claimant knew of the work-related nature of his condition in 1982. Dr. Failla did testify that *Claimant* told him that "he had a long history of bilateral knee pain, but his pain was being aggravated by driving his truck and by ascending and descending stairs." Deposition of Jack P. Failla, M.D., February 15, 1990, at 4. However, when asked on cross-examination if he had told Claimant "what the cause of his problems in his knee was," Dr. Failla answered; "No." *Id.* at 13. Thus, although Claimant was aware of a correlation between his pain and his work duties, there is nothing to suggest that Claimant knew that his work was actually a substantial contributing factor to his condition.

## II. Claimant's Appeal

Claimant maintains that the referee erred by suspending his benefits as of January 8, 1991. The referee's suspension order was based upon the testimony of Dr. D'Antonio, which the referee summarized in his decision as follows:

4. Dr. James A. D'Antonio ... testified that ... he has counseled the claimant since before the first surgery that he should not be performing the type of work which he does as it would appreciatively shorten the life of his total knee arthroplasty.

5. Dr. D'Antonio stated relative to the claimant's employment: "It's not that he can't bend. I believe he should not bend. He could be talking about a shortened lifespan by as much as ten years or more, which means instead of expecting that 10, 15, or 20 years out of his total knee, he might only get 5 years out of it. So on that basis, I counseled him not to return. (When the doctor was speaking of lifespan, he was speaking of the lifespan of the knee replacement and not the lifespan of the claimant).

. . . .

12. As the result of the aggravation of Claimant's pre-existing condition Claimant was temporarily totally disabled ... from January 13, 1990 to January 7, 1991 the date of Dr. D'Antonio's last examination of the claimant. Noting that Dr. D'Antonio testified in this March 21, 1991 deposition that it was not that the claimant could not perform the work, it is that he believed the claimant should not do the work.

13. Commencing January 8, 1991, Claimant was physically able to resume his pre-injury employment.

Referee's decision at 3–4.

■ A suspension of benefits is appropriate where a claimant has recovered from his work-related disability to the point where he can return to either his pre-injury job or another job with no loss of earnings and where it is demonstrated that such a job is actually available. *Scobbie v. Workmen's Compensation Appeal Board (Greenville Steel Car Co.)*, 118

Pa.Commonwealth Ct. 424, 545 A.2d 465 (1988), *petition for allowance of appeal denied,* 522 Pa. 607, 562 A.2d 829 (1989).

■ Claimant first argues that the referee's finding that he was physically able to return to work as of January 8, 1991 is not supported by substantial evidence because Dr. D'Antonio did not release him to return to work. Specifically, Claimant maintains that Dr. D'Antonio testified that he thought that Claimant should not return to his former position because it would shorten the lifespan of his knee replacements and that thus, Claimant was not able to return to his pre-injury employment.[6]

In support of this proposition, Claimant cites *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass Works),* 515 Pa. 315, 528 A.2d 580 (1987), in which the Supreme Court awarded benefits to a claimant whose preexisting condition had been aggravated by the physical requirements of her work. The claimant's medical witness in that case testified that the claimant should "never" return to work at her pre-injury position and that to do so would be "like playing Russian Roulette." *Id.* at 321, 528 A.2d at 583. In awarding benefits, the Supreme Court stated that "a claimant need not be so crippled or diseased as to be helpless in order to qualify for workmen's compensation; rather it is sufficient that a claimant's injury rendered him or her unfit or unable to do the type of work he or she had been engaged in when injured." *Id.* at 329, 528 A.2d at 587.

We find *Farquhar* to be distinguishable. In the instant case, Dr. D'Antonio did not state that Claimant should never return to his pre-injury position or that the aggravation of his pre-existing knee condition had rendered him unfit or unable to return to work. Dr. D'Antonio merely stated that there was a likelihood that Claimant's knee replacements would have a shorter life span if Claimant were engaged in the type of physical activity required by his pre-injury position.

6. Dr. D'Antonio did note that Claimant could return to a more sedentary type of employment without increasing the risk of damaging his knee replacements or aggravating his knee condition. *See* Deposition of Dr. James A. D'Antonio, M.D., March 21, 1991, at 6.

We believe that the present case is more analogous to our decision in *Bailey v. Workmen's Compensation Appeal Board,* 60 Pa.Commonwealth Ct. 338, 431 A.2d 1114 (1981). In *Bailey,* the claimant injured his back while lifting a piece of equipment. The employer voluntarily compensated the claimant until its doctor released claimant for work, at which time a termination petition was filed. The employer's medical expert, credited by the referee, testified that the claimant had a congenital weakness in his back which had predisposed him to the work-related injury. The referee found that all of the disability resulting from the work-related injury had ceased and thus granted the petition.

On appeal, we noted that the employer's medical expert had established that, by the time of the petition, the claimant's back was in the same condition as it had been before the injury. Further, the medical expert stated that the claimant would be vulnerable to reinjury if he returned to his pre-injury job but that the claimant could also reinjure his back "doing something as undemanding as tying his shoe." *Id.* at 340, 431 A.2d at 1115. We thus concluded that since all disability related to the work-related injury had ceased, the claimant was no longer entitled to benefits "despite the fact that he continued to have the same trouble that had predisposed him to injure himself at work." *Id.* at 342, 431 A.2d at 1116.

Similarly, in the instant case, Claimant suffers from a pre-existing condition which, in effect, predisposed him to injure or aggravate the knee condition (which for compensation purposes constitutes an injury). Claimant's own medical evidence has established that Claimant is able to return to his pre-injury position and, as in *Bailey,* the possibility that Claimant could reinjure his knees is not a basis to continue compensation.

▪ Claimant's final contention is that the suspension is improper because Employer failed to demonstrate that a light duty position is actually available. As we stated in our decision in *Vital Signs Institute, Inc. v. Workmen's Compen-*

*sation Appeal Board (Burke and Humetrics Corp.),* 114 Pa.Commonwealth Ct. 191, 204, 538 A.2d 617 (1988), however, an employer's burden to show job availability only arises "[o]nce a claimant has shown by credible evidence that he no longer can perform his former work because of a work-related injury." Claimant has not established that he can no longer perform his former work and thus Employer was not required to show job availability.

Accordingly, the order of the Board is affirmed.

## ORDER

NOW, May 24, 1993, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.