**SCHRADER BELLOWS PNEUMATICS, DIVISION OF PARKER–HANNIFIN CORPORATION, and Continental Insurance Co., Petitioners,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (EARLE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 13, 1998.
Decided April 22, 1998.

Thomas J. Madigan, Pittsburgh, for petitoner, Schrader Bellows.

Raymond E. Ginn, Jr., Wellsboro, for respondent.

Before DOYLE and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

DOYLE, Judge.

Schrader Bellows Pneumatics (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming an order of a Workers' Compensation Judge (WCJ) which had denied Employer's petitions to terminate and suspend the benefits of Walter Earle (Claimant).

The facts underlying the appeal are as follows. Claimant began work with Employer as a welder in 1976. Between 1979 and 1980, Claimant was assigned to work on a drill press with the same employer. This position involved contact with coolants which were necessary to keep the machine working properly. In 1980, Claimant developed contact dermatitis [1] on his feet, hands and arms. Near the end of 1980, Claimant was laid off from his work with the drill press; his condition resolved itself, and he became asymp-tomatic. Claimant returned to work approximately three weeks later. From 1981 to 1986, Claimant experienced two subsequent outbreaks of dermatitis which forced him to miss approximately two weeks of work for each episode. After being absent from work each time, the dermatitis would resolve itself, and Claimant would return to work.

In February of 1986, Claimant's feet began to break out in blisters to the point that the pain accompanying the blisters became intolerable. After receiving some treatment from Employer's physician, Claimant began receiving treatment from Dr. Clarence Scott, who directed Claimant to take two weeks off from work in conjunction with his treatment of Claimant. During the two-week period, Claimant's condition improved substantially. Upon returning to work, Dr. Scott directed Employer to provide Claimant with "rubbers" to cover his shoes, and, as a result, Claimant's condition did not return to his feet, but he did experience the condition on his hands and arms on subsequent occasions. From 1986 to 1988, Claimant experienced four to five recurrences of dermatitis on his arms and face, each recurrence resulting in an absence of approximately two weeks followed by a return to work.

In February of 1988, Claimant's dermatitis recurred from his elbow to his face, and he was directed to take two weeks off by Dr. Scott. Claimant returned to work and experienced a similar outbreak in August of 1988, which forced him to again take off work until October of 1992. As a result of this outbreak, Claimant began receiving benefits pursuant to a notice of compensation payable. On August 16, 1991, Employer filed a petition to terminate Claimant's benefits, alleging that, as of July 22, 1991, Claimant's condition had completely resolved. This petition was later withdrawn, but on February 13, 1992, Employer filed a second petition to terminate, again alleging that as of July 22, 1991, Claimant's condition had resolved such that Claimant could again return to work.

---

1. Contact dermatitis is a delayed type of induced sensitivity (allergy) of the skin resulting from skin contact with a specific allergen.

Claimant filed a timely answer to this petition, and it was assigned to a WCJ.

In October of 1992, Claimant returned to work for the first time since leaving in August of 1988. Claimant accepted an alternative position as a sub-assembler in a different area of Employer's facility. This position paid more than the drill-press position but involved the use of parts that had been manufactured using the drill press that Claimant had previously operated. After approximately two weeks as a sub-assembler, Claimant began to experience the same type of condition that had caused him to leave work in 1988. On November 17, 1992, Claimant was again directed by Dr. Scott to leave work, and Claimant has not returned to work since that date. On December 21, 1992, Employer filed a petition to suspend Claimant's benefits alleging that, as of October 16, 1992, Claimant was earning wages greater than those of his pre-injury job. Claimant filed a timely answer to this petition, and the hearings on both Employer's petition to terminate and its petition to suspend were subsequently consolidated and began on November 10, 1993.

At the November 10, 1993 hearing, Claimant testified as to the above events. Claimant indicated that he had never had any problems with dermatitis prior to beginning his work with Employer. He also indicated that his dermatitis usually went away within two weeks of ceasing work at Employer's facility. Claimant did note, however, that he had one outbreak of dermatitis during a period of time when he was unable to work for Employer. Due to the difference in the type of blisters involved, Claimant attributed this outbreak to an unfavorable reaction to chemotherapy that Claimant had received to treat bladder cancer.

In addition, Claimant presented the deposition testimony of Dr. Clarence Scott, Claimant's treating physician. Dr. Scott testified that Claimant's dermatitis was caused by exposure to coolants used at Employer's plant. Dr. Scott noted that Claimant did not experience dermatitis when he was not at Employer's facility and that Claimant's symptoms resolved each time after several weeks of absence from his workplace. In addition, Dr. Scott opined that Claimant could not continue to work for Employer. Specifically, Dr. Scott noted that the chemicals to which Claimant is sensitive are airborne; therefore, regardless of where in the plant or which type of position Employer would provide, Claimant will continue to experience the dermatitis as long as he is working at Employer's facility.

Further, Dr. Scott opined that the blisters that appeared on Claimant during a period of time when he was not working for Employer were a reaction to Claimant's chemotherapy treatment. Dr. Scott testified that, other than this isolated time, Claimant never had a recurrence of dermatitis at any time other than when he was working for Employer. Dr. Scott concluded that, if Claimant continued to work at Employer's facility in any capacity, he would continue to experience recurrences of dermatitis, which, if left untreated, could eventually lead to his death.

By decision and order dated December 27, 1995, the WCJ denied both the termination and the suspension petitions. In reaching this conclusion, the WCJ concluded that Claimant could not return to work without experiencing a recurrence of the dermatitis, and, therefore, Employer failed to demonstrate that Claimant was capable of returning to his pre-injury position or that other suitable employment was available to Claimant.

On appeal to the Board, the Board concluded that, due to the overwhelming amount of evidence connecting Claimant's dermatitis to his work with Employer, it was clear that Claimant would experience recurrences of the dermatitis when he returned to work with Employer. Therefore, the Board concluded that the WCJ properly denied both of Employer's petitions. In affirming the WCJ's decision, the Board rejected Employer's argument that, because Claimant's symptoms had resolved, the outcome of this case should be different than the so-called "recurrence upon return to work cases."

On appeal to this Court,[2] Employer argues that Claimant's predisposition to injury is not

2. Our standard of review is limited to determining whether necessary findings of fact were sup-

sufficient to render him totally disabled. Specifically, Employer argues that the "recurrence upon return to work" cases are not applicable to the present case, because in all of those cases, the claimant continued to suffer from an underlying condition which was aggravated upon returning to work.

■ It is well-settled that an employer seeking to terminate a claimant's benefits must establish by substantial evidence that all of a claimant's work-related injury has ceased, *Kerns v. Workmen's Compensation Appeal Board (Colt Resources, Inc.)*, 149 Pa. Cmwlth. 268, 613 A.2d 85 (1992), although a claimant may still be disabled despite the fact that his symptoms resolve if there is evidence that they are likely to recur once he returns to work. *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass Works)*, 515 Pa. 315, 528 A.2d 580 (1987); *Knapp v. Workmen's Compensation Appeal Board (GTE)*, 671 A.2d 258 (Pa.Cmwlth. 1996). In *Knapp*, this Court explained the rationale behind this principle as follows:

> The premise underlying compensation awards for future work-related aggravations is that if benefits were not awarded in these cases, the employees would return to the workplace where they would again become exposed and, thereafter, suffer disabling recurrences of work-related aggravation symptoms which are compensable under the Act. Rather than requiring employees with preexisting conditions to repeatedly reexpose themselves on pain of foregoing all compensation, we have recognized that the future recurrence of aggravation symptoms due to work exposure may be a compensable injury.

*Knapp*, 671 A.2d at 263.

■ In the present case, Dr. Scott testified that Claimant will continue to experience recurrences of the dermatitis if he continues to work for Employer because the conditions at Employer's facility are causing the dermatitis. In his deposition, Dr. Scott opined that, due to the air-borne nature of the irritants as well as the open-air environment of Employer's facility, there is no area in Employer's facility where Claimant could work without experiencing a recurrence of dermatitis.

In response, Employer argues that this case is not controlled by *Knapp* and *Farquhar*. Rather, Employer asserts that, because the Claimant's symptoms resolved, he is presently no longer disabled and is not entitled to benefits. Employer cites *Mancini's Bakery v. Workmen's Compensation Appeal Board (Leone)*, 155 Pa.Cmwlth. 641, 625 A.2d 1308 (1993); *Swartz v. Workmen's Compensation Appeal (Dutch Pantry Restaurant)*, 117 Pa.Cmwlth. 47, 543 A.2d 201 (1988), *petition for allowance of appeal denied*, 522 Pa. 580, 559 A.2d 40 (1989), for the proposition that the risk of future dermatitis is not a compensable injury. However, in *Bethlehem Steel Corporation v. Workmen's Compensation Appeal Board (Boles)*, 677 A.2d 857 (Pa.Cmwlth.1996), we specifically distinguished *Swartz* and *Mancini's Bakery* from *Farquhar* because, in the former cases, the claimants did not establish that they were unfit or unable to perform their duties when they returned to work. In the present case, however, Dr. Scott specifically stated that Claimant would not be able to perform his duties with Employer in any capacity at Employer's facility if he returned to work. Therefore, we find Employer's reliance on these cases to be misplaced.

Furthermore, we note that Employer's argument would establish a system whereby Claimant would either return to work and endure a future recurrence of dermatitis or forego future benefits under the Act. Only after Claimant returned to work and suffered a recurrence of dermatitis would he be able to file a petition for reinstatement of his benefits. This rationale, which clearly conflicts with the humanitarian nature of the Act, was dismissed in *Lash v. Workmen's Compensation Appeal Board*, 491 Pa. 294, 420 A.2d 1325 (1980):

> It would be barbaric to require an employee to continue in a position where he is exposed to a toxic substance until he is so

ported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's*

*Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth.1996).

ill that he physically is incapable of performing his job.

*Id.* 420 A.2d at 1327. We find it equally barbaric and absurd to require Claimant in the present case to endure a new outbreak of dermatitis in order to collect benefits under the Act.

Finally, we note that our Supreme Court has recently decided a similar issue in *Bethlehem Steel Corporation v. Workmen's Compensation Appeal Board (Baxter)*, —— Pa. ——, 708 A.2d 801 (1998), in which the Court concluded that a claimant was not entitled to benefits for a **preexisting** non-work-related asthma condition when the claimant had fully recovered from the work-related injury which aggravated that condition. However, *Baxter* is factually distinguishable from the present case because Baxter's asthmatic condition was present since childhood. Thus, Baxter's work with his employer did not cause the condition, but merely aggravated his preexisting asthmatic condition. Conversely, Claimant in the present case did not suffer from a preexisting condition; rather, his injury was directly *caused* by his employment, a fact that the *Baxter* Court indicated was absent from Baxter's case. Therefore, on the basis of this factual distinction, we conclude that *Baxter* does not control the instant appeal.

Order affirmed.

### *ORDER*

**AND NOW**, April 22, 1998, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.