**Terry L. ERNST, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ROLLINS TRANSPORTATION SYSTEM), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 21, 1998.
Decided Nov. 23, 1998.

Eric L.B. Strahn, Reading, for petitioner.

Thomas A. Archer, Piscataway, for respondent.

Before DOYLE and KELLEY, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Terry L. Ernst (Claimant) petitions for review of an order of the Workers' Compensation Appeal (Board) that affirmed a decision by a workers' compensation judge (WCJ) granting the termination petition filed by Rollins Transportation Systems (Employer). We reverse.

On January 19, 1990, Claimant sustained a work-related lower back injury and received total disability benefits pursuant to a notice of compensation payable issued by Employer. On October 12, 1994, Employer filed a termination petition alleging that, as of July 23, 1994, Claimant was fully recovered from his work-related injury. Claimant denied the allegations and hearings were held before a WCJ.

Employer presented the deposition testimony of Harold W. Pearson, M.D., a board certified orthopedic surgeon, who performed an independent medical evaluation on June 23, 1994.[1] Employer also entered into evidence a surveillance film of Claimant that depicted Claimant aiding his son with the repair of an automobile in July of 1993. Claimant and his wife testified on Claimant's behalf and presented the deposition testimony of Claimant's treating physician, David W. Allen, M.D., a board certified neurosurgeon.[2]

Dr. Pearson testified that Claimant explained the circumstances of his injury, that Claimant underwent two laminectomies, and that Claimant complained of pain contending that it severely reduced his ability to perform everyday activities. Dr. Pearson testified to his examination findings, explaining that some of the results were subjective and inconsistent with organic disease. The doctor stated that following the examination he diagnosed Claimant as suffering from chronic back syndrome and overlay.

Dr. Pearson further testified that subsequent to the examination he reviewed the surveillance tape and that he changed his opinion from overlay to malingerer. He clarified this opinion by stating that it coincided with his prior opinion expressed following the

---

1. The WCJ's finding of fact no. 9 incorrectly indicates an examination date of July 23, 1994.

2. In finding of fact no. 6, the WCJ indicated that Dr. Allen was a neurologist.

examination. Dr. Pearson further indicated that he filled out a physical capacities chart providing some restrictions. When asked on direct examination for his opinion concerning a return to work without restrictions, Dr. Pearson replied that Claimant evidenced no objective signs of a disability, but that "he has to do the restrictions that I gave him on the physical capacities study." (Dr. Pearson's deposition, p. 21). Then, on cross-examination, Dr. Pearson indicated that although he thought all physical disability had resolved, he could not prove it. He further stated that although Claimant may have ongoing problems he believed Claimant was "faking my examination." *Id.* at p. 22. Following this exchange, Dr. Pearson stated that:

> A. I'm giving him the benefit of the doubt and stating that he is in the same categories as all the other patients that I have treated who have similar jobs having had two laminectomies.
>
> Q. Meaning that they have ongoing disabilities?
>
> A. They have ongoing restrictions.

*Id.*

Following the close of the record, the WCJ granted Employer's termination petition. Nine of the eighteen findings of fact listed by the WCJ in his decision are as follows:

> 8. In July 1993 the defendant hired a private investigator and surveillance film of the claimant performing physical activities beyond his alleged capabilities was obtained.
>
> . . . . .
>
> 10. Dr. Pearson had the opportunity to view the surveillance videotape of the claimant performing various physical activities, while Dr. Allen did not view the videotape nor consider such evidence in his testimony.
>
> 11. After viewing the claimant on the videotape, Dr. Pearson testified that the

claimant fully recovered from the work injury as of July 24, 1994.

> 12. Dr. Allen opined that the claimant suffered from chronic back pain as a result of the work-related injury and that the claimant could not perform his pre-injury job.
>
> 13. The expert medical testimony of Dr. Pearson is found to be competent, credible and worthy of belief and is adopted in its entirety.
>
> 14. The testimony of Dr. Allen, to the extent that it does not conflict with the testimony of Dr. Pearson, is found to be competent, credible and worthy of belief.
>
> 15. The testimony of the claimant and the claimant's wife is found to be credible insofar as it relates to the initial injury, and to the extent that it does not conflict with the testimony of Dr. Pearson.
>
> 16. Otherwise, the testimony of the claimant is found to be incredible and not worthy of belief.
>
> 17. The Court finds that the claimant fully recovered from the work injury of January 19, 1990 as of July 24, 1994.

(WCJ's decision, p. 3).

Claimant appealed to the Board contending: (1) that the WCJ's findings are not supported by substantial evidence in that Dr. Pearson's testimony is not competent and is equivocal, and (2) that the WCJ failed to issue a reasoned decision pursuant to Section 422 of the Worker's Compensation Act (Act).[3] However, after review the Board affirmed.

Claimant now appeals to this Court,[4] raising the same issues he raised before the Board. Specifically, with regard to the first issue, Claimant contends that Dr. Pearson's testimony does not support a termination in that he opined that Claimant could return to work but *with* restrictions. Claimant points to Dr. Pearson's acknowledgment that Claimant may have ongoing problems and that even after viewing the surveillance film he was *giving Claimant the benefit of the doubt*

3. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 834.

4. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Cmwlth. 436, 550 A.2d 1364 (Pa.Cmwlth. 1988).

that Claimant had continuing pain. Claimant emphasizes that at no time did Dr. Pearson testify that Claimant was fully recovered and could return to work without restrictions.

■ We are cognizant of the fact that the WCJ failed to summarize any of the testimony that was provided to him, making appellate review of this case most difficult. However, consideration of the first issue raised by Claimant is possible because a determination of whether a medical expert's testimony is equivocal is a question of law, fully reviewable by this Court. *Cordero v. Workmen's Compensation Appeal Board (H.M. Stauffer & Sons, Inc.),* 664 A.2d 1106 (Pa.Cmwlth.1995), *petition for allowance of appeal denied,* 543 Pa. 732, 673 A.2d 337 (1996). We further note that the medical witness' entire testimony must be reviewed and taken as a whole. *Id.* Moreover, a surveillance film may be a basis for the grant of a termination petition only so long as it is corroborated by competent medical testimony. *Clemente–Volpe v. Workmen's Compensation Appeal Board (Westinghouse Air Brake Division),* 154 Pa.Cmwlth. 594, 624 A.2d 666 (Pa.Cmwlth.1993), *petition for allowance of appeal denied,* 536 Pa. 632, 637 A.2d 292 (1993).

Because the issue here concerns a medical expert's testimony and a claimant's complaints of pain, Claimant relies on *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.),* 550 Pa. 319, 327, 705 A.2d 1290, 1293 (1997), wherein the Supreme Court stated:

> We must keep in mind that the employer bears the burden of proof in a termination proceeding to establish that the work injury has ceased. In a case where the claimant complains of continued pain, this burden is met when an employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that they are no objective medical findings which either substantiate the claims of pain or connect them to the work injury. If the WCJ credits this testi-

mony, the termination of benefits is proper. (Footnote omitted.)

■ Although much of the *Udvari* opinion concerns whether or not the physician's acknowledgment of the claimant's pain would defeat a termination petition, that is not the situation presently before this Court. Here, Dr. Pearson testified that although he found no objective medical findings to substantiate Claimant's complaints of pain and despite his opinion after viewing the film that Claimant was a malingerer, the doctor testified that he was giving Claimant the benefit of the doubt and imposing restrictions on Claimant's work activities. Our review of Dr. Pearson's testimony reveals that this is clearly the thrust of the doctor's testimony taken as a whole. Therefore, under *Cordero* and *Udvari,* we conclude that Dr. Pearson's testimony cannot support a termination of benefits. Regardless of the fact that the WCJ did not credit Claimant's testimony concerning pain, Employer is the burdened party in a termination and its medical expert did not testify that Claimant had fully recovered and could return to work without restrictions.

For the reasons stated above, we reverse the Board's order.[5]

### ORDER

NOW, November 23, 1998, the order of the Workers' Compensation Appeal Board, at No. A96–4319, dated April 9, 1998, is reversed.

KELLEY, Judge, dissenting.

I respectfully dissent.

After thoroughly reviewing the entire expert medical testimony of Dr. Pearson, I conclude it is unequivocal and supports the WCJ's granting of employer's termination petition. Specifically, I note that Dr. Pearson testified *within a reasonable degree of medical certainty* that claimant fully recovered from his work-related injury and was able to return to work. Reproduced Record (R.) 20a–21a. The doctor based his opinion

---

5. Having held that the Board's order should be reversed based upon the *Cordero* and *Udvari* de-
cisions, we need not reach Claimant's second issue.

on the fact that he did not find any objective basis to support claimant's assertion of ongoing disability. R. 20a. In addition, the doctor characterized claimant as a malingerer and declared that claimant exaggerated or faked his symptoms during the physical examination. R. 13a, 16a, 40a. Dr. Pearson did so because he could not find an organic explanation for claimant's complaints and observed claimant moved in a fluid normal motion with no signs of discomfort. R. 12a, 18a.

In reversing the board's decision, the majority relies heavily on the fact that Dr. Pearson limited claimant's activities to some extent in a physical capacities chart. With regard to placing the limitations on claimant, the doctor testified on cross-examination as follows:

Q. So you still think he has ongoing problems but you think he may be able to do some light-duty work?

A. No, he may have ongoing problems. The problem here is that I can't believe the patient because he is faking my examination ... I am giving him the benefit of the doubt and stating that he is in the same categories [sic] as all the other patients that I have treated who have similar jobs having two laminectomies.

Q. Meaning that they have ongoing disabilities?

A. They have ongoing restrictions.

Q. I think we're just talking about a difference in terminology.

A. Well, disability is not a medical term.

Q. Well, they have – the reason you want to continue certain restrictions is because you feel that there's still something wrong with his back?

A. No. But he's complaining of pain and I'm giving him the benefit of the doubt.

After considering this testimony in conjunction with the previously cited medical opinion of Dr. Pearson, I conclude that claimant's subjective complaints of pain are not related to the work injury.[1] For whatever reason, Dr. Pearson is giving claimant "the benefit of the doubt" regarding his complaints of pain and is limiting his physical activities.[2] The reason has no medical basis and is outside the realm of Dr. Pearson's professional opinion. Instead, it is a personal judgment which does not vitiate the doctor's expert medical opinion that claimant fully recovered from the work injury, that there is no objective basis for claimant's complaints, and that claimant could return to work.[3]

Because employer established by unequivocal medical testimony that all disability re-

1. In *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 550 Pa. 319, 327, 705 A.2d 1290, 1293 (1997) our Supreme Court stated:

The determination of whether a claimant's subjective complaints of pain are accepted is a question of fact for the WCJ. In the absence of objective medical testimony, the WCJ is neither required to accept the claimant's assertions, nor prohibited from doing so. Testimony by the employer's medical expert as to the *existence* of claimant's *complaints* of pain does not require the WCJ to find for the claimant. A contrary conclusion would lead to the absurd result that a claimant could forever preclude the termination of benefits by merely complaining of continuing pain. What is relevant in deciding is whether the termination of benefits is warranted is whether the claimant suffers from pain as a result of the work-related injury.
(Emphasis in original).

2. Similar to the medical testimony reviewed in *Udvari*, Dr. Pearson gave claimant "the benefit of the doubt" and acknowledged claimant's complaints of pain, even though he testified that there is no objective basis for claimant's complaints. Dr. Pearson did so even though he opined within a reasonable degree of medical certainty that claimant was a malingerer. Since the WCJ determined Dr. Pearson to be a credible medical witness, we should not, by implication, decide that Dr. Pearson's medical opinion is contrary to the opinion he directly and clearly stated. *Laird v. Workmen's Compensation Appeal Board (Michael Curran & Associates)*, 137 Pa. Cmwlth. 206, 585 A.2d 602, 604 (Pa.Cmwlth. 1991).

3. If anything, Dr. Pearson's concession would bear on the WCJ's credibility determination. Since credibility determinations are within the sole province of the WCJ and the WCJ is free to accept or reject the medical testimony of any witness, in whole or in part, the WCJ's decision should not be disturbed. *Broughton v. Workers' Compensation Appeal Board (Disposal Corporation of America)*, 709 A.2d 443 (Pa.Cmwlth.1998).

lated to the compensable injury ceased, I would affirm the order of the board.