# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven DiCarlantonio,          :
                  Petitioner    :
                          :
          v.            :  No. 1682 C.D. 2017
                          :  Submitted: March 9, 2018
Workers' Compensation Appeal   :
Board (Oldcastle Precast, Inc.),   :
                  Respondent  :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED: May 11, 2018**

Steven DiCarlantonio (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) granting Claimant's claim petition and awarding Claimant workers' compensation (WC) benefits for the closed period from September 14, 2015, to October 8, 2015, at which point the WCJ terminated benefits based on the resolution of the work-related injury.[1] On appeal, Claimant argues his benefits should not have been terminated on October 8, 2015, because his work-related injury, contact dermatitis stemming from occupational exposure, is an ongoing condition that, while currently resolved, would recur if he returns to work.

---

[1] The WCJ also denied a penalty petition filed by Claimant. Claimant did not appeal that denial.

Claimant also asserts his WC benefits should not have been terminated because the experts opined he could only return to work with protective clothing and the finding of full recovery as of October 8, 2015, is not supported by substantial evidence. Because Claimant did not establish that he had an ongoing disability as a result of his contact dermatitis, and the credited testimony established that Claimant's condition had resolved as of October 8, 2015, we affirm.

Claimant worked at Oldcastle Precast, Inc. (Employer) for four years, most recently as a supervisor who was also required to work with rebar. (WCJ's Finding of Fact (FOF) ¶ 1.) He worked with black steel, galvanized steel, and steel covered in epoxy. On March 11, 2015, Claimant noticed a rash on one arm, which subsequently moved to both arms. Claimant sought treatment from Patient First, which gave him cream and a steroid, and the steroid improved the rash. Unsure of the rash's cause, he continued his employment and, when the rash recurred, was again given a steroid. Claimant subsequently obtained a steroid from his primary care physician, which helped the rash go away. However, each time the steroid wore off, Claimant's rash would re-appear. Eventually, in September 2015, Claimant sought the opinion of a board-certified dermatologist (Claimant's Dermatologist). Claimant stopped working on September 14, 2015, due to the continuation of the rash and the pain associated with the rash becoming too much. Claimant told his supervisor of the rash and that this was why he was leaving his job. On September 29, 2015, Claimant filed the claim petition, describing his work injury as contact dermatitis caused by his work environment.

The WCJ held a hearing, at which Claimant testified to the above history. He also explained that his rash would improve whenever he was away from work for

more than a day and that, since he has stopped working, the rash has resolved. While Claimant believed he could perform his job, he was afraid of getting the rash again.

Claimant's Dermatologist testified by deposition and opined that "Claimant had contact dermatitis which [is] . . . an allergic reaction to something Claimant was exposed to in the environment" and, based on Claimant's history, the rash came from a chemical. (*Id.* ¶ 3b.) Claimant's Dermatologist stated the only treatment to resolve the contact dermatitis is to remove the person from the cause and that, when Claimant stopped working, the rash improved. However, he also explained that, while there was a risk the rash could recur, he did not know if the rash would recur if Claimant returned to work and that it could have been a one-time reaction that would not happen again. (Reproduced Record (R.R.) at 58a, 86a.) According to Claimant's Dermatologist, Claimant's rash was gone by October 8, 2015, and there was no sign of it at a subsequent visit on March 22, 2016.

Employer presented the deposition testimony of a board-certified dermatologist (Employer's Dermatologist), who opined, based on the history provided by Claimant, his examination of Claimant, and a review of the medical records related to treating the rash and a list of chemicals used by Employer, that Claimant "had a diagnosis of a resolved contact dermatitis . . . likely caused by exposure to things at work." (FOF ¶ 4e.) However, Employer's Dermatologist noted that there was no exact determination of what chemical caused the allergy because no patch test had been done. He agreed with Claimant's Dermatologist's opinion that Claimant was fully recovered as of October 8, 2015. Employer's Dermatologist "was unable to give an opinion of what would happen if the Claimant went back to that work environment, although he was comfortable with the Claimant returning with protective clothing and equipment." (*Id.* ¶ 4g.)

3

The WCJ found that the medical experts essentially agreed and, based on those opinions, the WCJ held that Claimant was temporarily disabled from his work due to his work-related contact dermatitis from September 14, 2015, to October 8, 2015, at which time Claimant was completely recovered. (*Id.* ¶ 6.) The WCJ noted that "while both of the[] experts recognize the possibility that the rash could return upon the Claimant's return to work, neither of them had adequate information to lead them to opine that it would return upon return to work." (WCJ Decision at 7.) Thus, the WCJ granted the claim petition, awarded benefits for a closed period, and terminated those benefits as of October 8, 2015.

Claimant appealed to the Board, arguing, *inter alia*, that the WCJ's findings were not supported by substantial evidence and that the decision was contrary to *Schrader Bellows Pneumatics v. Workers' Compensation Appeal Board (Earle)*, 711 A.2d 578 (Pa. Cmwlth. 1998). The Board concluded the expert testimony supported the findings, particularly the finding that Claimant's injury had resolved on October 8, 2015. (Bd. Opinion at 5-6.) The Board found Claimant's reliance on *Schrader Bellows* misplaced because, in that case, there was unequivocal medical testimony that, if the claimant attempted to work, he would continue to experience dermatitis and, thus, he could not continue to work for the employer. Here, the Board concluded, there was no such unequivocal testimony that would allow Claimant to meet his burden of proving that his disability continued beyond October 8, 2015. (*Id.* at 6.) Claimant now petitions this Court for review.[2]

---

[2] This Court's "review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Phila. v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

On appeal, Claimant argues it was error to terminate his benefits as of October 8, 2015, because his work-related contact dermatitis is an ongoing condition and, although he is not currently exhibiting symptoms, his return to work would result in his re-exposure to the chemicals that caused the dermatitis and recurrence of the rash. Citing numerous cases, Claimant asserts that, under these circumstances, he is entitled to ongoing benefits without having to subject himself to further exposure. He further argues the termination of benefits is improper where a claimant requires ongoing work restrictions, *Ernst v. Workers' Compensation Appeal Board (Rollins Transportation System)*, 720 A.2d 1085 (Pa. Cmwlth. 1998), and here, the experts considered his return to work possible only with the use of protective clothing. Finally, Claimant argues termination of his benefits was not proper because there was no evidence that he had fully recovered from the underlying condition as of October 8, 2015. We will address these arguments in turn.

In a claim petition proceeding, the claimant bears the burden of establishing all of the elements necessary to support an award of WC benefits, including the existence of an injury and disability, and a causal relationship between the injury and the work incident. *Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Thomas)*, 725 A.2d 873, 876 (Pa. Cmwlth. 1999). Disability is the loss of earnings or earning power that is caused by the work-related injury. *Sch. Dist. of Phila. v. Workers' Comp. Appeal Bd. (Lanier)*, 727 A.2d 1171, 1172 (Pa. Cmwlth. 1999). The burden remains on the claimant to show that his work-related injury continues to cause disability throughout the pendency of the claim proceeding. *Somerset Welding & Steel v. Workmen's Comp. Appeal Bd. (Lee)*, 650 A.2d 114, 119 (Pa. Cmwlth. 1994). "[A] WCJ is authorized, when considering a claim petition, to award compensation for a work-related injury and, in addition, to terminate benefits as of the date the

5

disability ceased, although a termination petition has not been filed, if the claimant has not carried [his] burden of proof to establish a continuing disability." *Ohm v. Workmen's Comp. Appeal Bd. (Caloric Corp.)*, 663 A.2d 883, 886 (Pa. Cmwlth. 1995).

Claimant first argues this matter is on all fours with *Schrader Bellows* and *Henry Paul Cadillac, Inc. v. Workmen's Compensation Appeal Board (Stephens)*, 496 A.2d 1364 (Pa. Cmwlth. 1985), which hold that a claimant is entitled to ongoing benefits without subjecting himself to further exposure if the contact dermatitis can or will recur from renewed exposure. He also asserts, pursuant to *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass Works)*, 528 A.2d 580 (Pa. 1987), and *Lash v. Workmen's Compensation Appeal Board (General Battery Corporation)*, 420 A.2d 1325 (Pa. 1980), that once a claimant establishes through medical evidence an ongoing condition that is work related and that a return to work would risk further physical harm, the claimant is entitled to ongoing benefits absent proof from the employer that the risk of further harm is not related to the compensable injury. Claimant maintains the expert testimony here establishes that his contact dermatitis was caused by work exposure; the dermatitis is an ongoing condition; the treatment for the dermatitis is his removal from that environment; and it is "almost certain" that the rash would recur if he returned to work. (Claimant's Br. at 24.)

Employer responds that *Schrader Bellows* is distinguishable because in that case the medical expert testified that the claimant would experience a recurrence if he continued to work. With regard to *Farquhar* and *Lash*, Employer argues that, unlike here, the claimants in those cases suffered from residual work injuries that were never resolved, respectively thrombosis and lead poisoning, and the medical

evidence established that these claimants should never return to their pre-injury positions. Employer contends Claimant's reliance on these cases is misplaced because the experts' testimony here is uncertain as to the potential of recurrence if Claimant returned to his position. The WCJ, according to Employer, recognized the lack of certainty in the expert testimony and properly limited benefits to the closed period from September 14, 2015, to October 8, 2015.

A claimant may be considered disabled by a work-related injury despite the resolution of his symptoms "if there is evidence that [the symptoms] are **likely** to recur once he returns to work." *Schrader Bellows*, 711 A.2d at 581 (emphasis added) (citing *Farquhar*, 528 A.2d 580). Thus, where a claimant "establish[es] that [he is] unfit or unable to perform [his] duties when [he] return[s] to work" by unequivocal medical testimony, ongoing disability can be established. *Id.* However, "[t]he **possibility** of a future recurrence does not constitute a compensable disability." *Swartz v. Workmen's Comp. Appeal Bd. (Dutch Pantry Rest.)*, 543 A.2d 201, 204 (Pa. Cmwlth. 1988) (emphasis added). Medical testimony that a claimant's return to work "might" or "could" precipitate an adverse reaction does not establish that a claimant is unable or unfit to return to work. *Bethlehem Steel Corp. v. Workmen's Comp. Appeal Bd. (Boles)*, 677 A.2d 857, 860 (Pa. Cmwlth. 1996).

At its essence, the question before us is whether the expert testimony establishes that Claimant's return to his pre-injury position **would** result in a recurrence of his contact dermatitis rendering him unfit or unable to perform his duties if he returned to work. The WCJ found that both experts recognized the **possibility** that Claimant's rash could return if he returned to work, but "**neither of them had adequate information [available] to lead them to opine that it <u>would</u> return upon [Claimant's] return to work**." (WCJ Decision at 7 (emphasis

7

added).)   After reviewing the record, we conclude this finding is supported by substantial evidence.[3]

Claimant's Dermatologist testified as follows:

Q: If the claimant were to go back to work and be exposed to those chemicals, do you believe that the rash would reappear?

A: It **could** reappear.  **I don't know**.
. . . .
Q: Do you feel that if he were to go back to work, it would put him at greater risk of the rash coming back?

A: **That's a risk**, yes.

(R.R. at 58a (emphasis added).)  On cross-examination, Claimant's Dermatologist agreed it was **possible that this was a one-time reaction that Claimant will not experience again**.  (*Id.* at 86a.)  After noting that no patch test had been performed on Claimant, Employer's Dermatologist testified about Claimant's return to work without protective equipment, stating that it was "**very, very hard to predict what would happen** after this extended period" and that "**once the skin is healed and recovered**" a **patient can go "back into the workplace and [he] can function fully without issue**."   (*Id.* at 124a, 130-31a (emphasis added).)   Claimant points to Employer's Dermatologist's testimony that "if [Claimant] does have an allergy to something to which he's going to have direct skin exposure at his work, **I would expect that he's going to get the rashes again**[;]" however, Employer's Dermatologist added that "**it's hard to predict without the information that we're missing**." (*Id.* at 131a (emphasis added).)

---

[3] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *City of Phila. v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

8

Considering this testimony and the reasonable inferences deducible therefrom in the light most favorable to the party that prevailed below, *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998), a reasonable mind could accept it as adequate to support the WCJ's finding that neither expert opined that Claimant's rash would recur if he returned to work. This testimony does not establish with "almost certain[ty]," (Claimant's Br. at 24), that the rash would recur, but is more like the "could" and "might" language this Court has found to be insufficient to establish that a recurrence was likely and that the claimant was unfit or unable to perform his duties if he returned to work. *Boles*, 677 A.2d at 860. Thus, the WCJ's finding is supported by substantial evidence.

Claimant's reliance on *Farquhar*, *Schrader Bellows*, and *Henry Paul Cadillac* is misplaced because, in those cases, there was testimony that the symptoms or injury were likely to recur resulting in the claimants' inability to return to their pre-injury positions. In *Farquhar*, the claimant's physician testified that the claimant, who suffered from work-related thrombosis, should never perform her work duties again and, to do so, "would expose her to great risk of another, potentially more dangerous thrombosis attack" and was akin to "playing Russian Roulette." 528 A.2d at 583. In *Schrader Bellows*, the claimant suffered, over numerous years, multiple incidents of contact dermatitis due to the coolants used by the employer, and the claimant's physician testified that, due to the airborne nature of the coolants, "regardless of where in the plant or which type of position [the e]mployer would provide, [the c]laimant will continue to experience the dermatitis as long as he is working at [the e]mployer's facility." 711 A.2d at 580. In *Henry Paul Cadillac*, a claimant's physician testified that the claimant had become sensitized to particular allergens

9

over his years of work such that the physician did not "think [the claimant] can do it anymore, because the least exposure now that he has, even if it's minimal, he's probably going to break out." 496 A.2d at 1366. Although the physician in *Henry Paul Cadillac* used the word "probably," the facts in that case made the recurrence likely because the claimant had a prior compensable injury of contact dermatitis, had a recurrence upon his return to work, had a patch test performed to determine his exact allergy, and the known allergen was used in the employer's daily business of car washing. In all of these cases, the testimony found to be substantial evidence established that the claimants would suffer a recurrence of their symptoms or injury rendering them unfit or unable to perform their duties if they returned to work. *Farquhar*, 528 A.2d at 587-88; *Schrader Bellows*, 711 A.2d at 580-81; *Henry Paul Cadillac*, 496 A.2d at 1366. The testimony here does not rise to this level of certainty as to either the recurrence of Claimant's contact dermatitis or his inability to perform his duties if he returned to work.

While our Supreme Court has stated that "[i]t would be barbaric to require an employee to continue in a position where he is exposed to a toxic substance until he is so ill that he physically is incapable of performing his job," *Lash*, 420 A.2d at 1327, this situation is distinguishable from *Lash*. The claimants in *Lash* sought partial disability benefits because, as a result of their becoming "lead absorbers," meaning that they absorbed lead into their blood at abnormally high rates which made future exposures of lead hazardous, they were reassigned to lower paying, non-lead handling positions. *Id.* at 1325. Although the claimants' health had not yet deteriorated to advanced lead poisoning, the Supreme Court held they did not have to work until they became ill in order to establish a compensable injury because the evidence established that their becoming "lead absorbers" was a direct result of their

10

work and future exposure to lead would be perilous to their health. *Id.* at 1326. Unlike the evidence in *Lash*, the testimony here does not establish that Claimant's contact dermatitis will recur if he returns to work or that his return to work would be perilous to his health.

Accordingly, there is substantial evidence to support the WCJ's finding that neither expert opined that Claimant's contact dermatitis **would** recur if he returned to work. Absent such testimony, Claimant could not establish his ongoing disability on that basis and, therefore, did not meet his burden of proof on the claim petition.

Claimant next argues that termination of his benefits as of October 8, 2015, is not appropriate because Employer's Dermatologist testified that Claimant could return to work only if he was provided reasonable accommodations for his allergy. According to Claimant, an expert opinion that a claimant can return to work, but with restrictions, may not support the termination of benefits. *Ernst*, 720 A.2d at 1088. Here, when asked whether he would be comfortable with Claimant returning to work with protective clothing, Employer's Dermatologist responded yes. (R.R. at 131a.) Employer responds, *inter alia*, that Claimant is attempting to shift the burden of proof before he established all of the necessary elements for obtaining ongoing benefits.

Initially, we observe that *Ernst* involved a termination petition, which placed the burden on the employer to prove by expert testimony that the claimant had fully recovered and could return to work without restrictions related to the work-injury. *Ernst*, 720 A.2d at 1088. This matter involves a claim petition, and the burden is on Claimant to prove, *inter alia*, an ongoing disability as a result of a work-related injury. Claimant did not meet that burden and, therefore, the burden never shifted to Employer.

11

Additionally, while the WCJ's finding that Employer's Dermatologist "was unable to give an opinion of what would happen if the Claimant went back to that work environment, although he was comfortable with the Claimant returning with protective clothing and equipment," (FOF ¶ 4g), reflects Employer's Dermatologist's testimony, (R.R. at 131a), it is unclear that such testimony was, as Claimant asserts, the equivalent of an imposition of work restrictions. A review of Employer's Dermatologist's testimony in its entirety reveals that **he did not impose those restrictions on Claimant's return to work**. Employer's Dermatologist explained that, for **his patients** who experienced contact dermatitis, he first tried to figure out the source of the allergy and then, based on that, suggested reasonable accommodations be made to eliminate direct skin exposure to the allergen or to provide protective equipment and that, if these were followed, "it was very likely that the patient could return to work." (R.R. at 125a, 127a, 131a.) However, on cross-examination, Employer's Dermatologist clarified that **he was not recommending modifications to Claimant's job duties or the use of protective gear**. (*Id.* at 134a.) Thus, while he was comfortable with Claimant returning to work with protective equipment, Employer's Dermatologist did not, as Claimant asserts, require that those modifications be implemented before Claimant could return to work. Accordingly, we are not persuaded by Claimant's argument that the Board's decision should be reversed on this basis.

Finally, Claimant asserts that, technically, neither expert opined that Claimant was fully recovered from his underlying condition, *i.e.*, an allergy to some work chemical, as of October 8, 2015, and, therefore, the termination date is arbitrary and not based on substantial evidence. Employer replies that the WCJ's decision to cease benefits as of October 8, 2015, is supported by the testimony of both Dermatologists.

12

Although Claimant's Dermatologist testified that the underlying allergy remained, he also testified that the contact dermatitis for which Claimant sought treatment had resolved by October 8, 2015. (*Id.* at 73a, 80a.) He also agreed that the March 22, 2016 appointment was not related to the prior episode of contact dermatitis because Claimant had already been released by him in October as recovered. (*Id.* at 74a.) Based on Claimant's treatment notes and the history Claimant provided him, Employer's Dermatologist agreed that Claimant had recovered by October 8, 2015, and remained recovered as of March 22 and 31, 2016, Claimant's most recent appointments with Claimant's Dermatologist and Employer's Dermatologist, respectively. (*Id.* at 127a-28a.) This testimony supports the WCJ's finding that Claimant had fully recovered from his condition as of October 8, 2015. The fact that there is other evidence in the record that could support a contrary finding is of no moment. *Hoffmaster*, 721 A.2d at 1155 ("[I]n a substantial evidence analysis where both parties present evidence, it does not matter that there is other evidence in the record which supports a factual finding contrary to that made by the WCJ[;] rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding.").

Moreover, as discussed above, because the evidence did not establish that Claimant's symptoms would likely recur upon his return to work, Claimant did not meet his burden of proving ongoing disability. Thus, while Claimant may have established that he had a compensable injury, he did not establish "that the injury continue[d] to cause disability throughout the pendency of the claim petition proceeding." *Somerset Welding and Steel*, 650 A.2d at 119. Having not met his burden of proving an entitlement to ongoing benefits, there was no error in terminating benefits as of October 8, 2015. *Ohm*, 663 A.2d at 886.

13

Accordingly, the Board's Order is affirmed.

_____
**RENÉE COHN JUBELIRER,** Judge

Judge Fizzano Cannon did not participate in the decision in this case.

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven DiCarlantonio,          :
                Petitioner     :
                                 :
          v.                 :    No. 1682 C.D. 2017
                                 :
Workers' Compensation Appeal     :
Board (Oldcastle Precast, Inc.),      :
               Respondent    :

# **O R D E R**

**NOW**, May 11, 2018, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

_____

**RENÉE COHN JUBELIRER,** Judge