# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Solid Waste Services, Inc., d/b/a    :
J.P. Mascaro & Sons,                :
              Petitioner    :
                            :
           v.                :   No. 441 C.D. 2020
                            :   Submitted: September 18, 2020
Workers' Compensation Appeal    :
Board (Boos),               :
              Respondent  :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER           FILED: March 31, 2021

Solid Waste Services, Inc., d/b/a J.P. Mascaro & Sons (Employer) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the Decision of a Workers' Compensation Judge (WCJ) granting Mark Boos's (Claimant) Claim Petition. On appeal, Employer argues that the Board erred in affirming because: (1) the WCJ's finding that Claimant's work-related laceration became infected was not supported by substantial evidence; (2) Claimant's medical expert's causative testimony was equivocal and, therefore, legally incompetent; and (3) the award of ongoing disability benefits was impermissibly based on the mere possibility that Claimant's symptoms will recur in the future. Upon review, we affirm because substantial evidence supported the WCJ's findings, Claimant's medical expert's testimony was not equivocal, and the award of ongoing benefits

was not based on the potential that Claimant might have future symptoms, but on a finding that Claimant's symptoms are ongoing.

## I. Background

### A. *Claim Petition*

On October 10, 2017, Claimant filed the Claim Petition alleging that, on March 21, 2017, he was knocked off of a truck at a landfill and sustained a work-related injury in the nature of a laceration to his lower left leg that resulted in Claimant developing an autoimmune disease. (WCJ Decision, Finding of Fact (FOF) ¶ 1; *see* Claim Petition, Reproduced Record (R.R.) at 8a.) Claimant sought total disability benefits ongoing from March 21, 2017. Employer filed an answer denying the Claim Petition's material allegations.

The matter was assigned to the WCJ, who held two hearings. At the first hearing, on November 3, 2017, the WCJ held a preliminary discussion with counsel, and at the second, on April 11, 2018, Claimant testified live before the WCJ and offered photographic and documentary evidence, as well as the trial deposition testimony of Sean McCall, D.O., a board-certified internist (Claimant's Expert). Employer presented the trial deposition testimony of Samuel Valenti, M.D., also a board-certified internist (Employer's Expert).

### B. *Claimant's Evidence*

In support of his Claim Petition, Claimant testified as follows.[1] Claimant worked for Employer as a tractor-trailer driver, hauling garbage from New Jersey to Keystone Landfill in Dunmore. On March 21, 2017, while maneuvering his truck on to a tipper machine at Keystone Landfill, Claimant fell out of his truck and into

---

[1] Claimant's testimony is summarized in Findings of Fact 3-7, and the transcript of that testimony is found at pages 97a-139a of the reproduced record.

the garbage pit, cutting his left leg on a piece of metal. Claimant immediately called his supervisor and explained what happened. He washed the laceration with saline solution and, two hours later, went to Employer's office, where he was instructed to seek treatment at Northeast Rehabilitation in Scranton. At Northeast Rehabilitation, Claimant saw Employer's Expert, who cleaned the laceration and prescribed Claimant antibiotics. Thereafter, Claimant returned to work in a limited capacity, seeing Employer's Expert on several more occasions. On one of those "visit[s,] [C]laimant recalled expressing concern to [Employer's Expert] that he still had pus[] coming out of the wound." (FOF ¶ 5.) Employer's Expert "cleaned the wound and released [C]laimant to full[-]duty work." (*Id.*)

After resuming work driving the tractor-trailer, Claimant recalled an incident, which he testified occurred approximately one month after his accident, in which his left foot became swollen and he had to cut his boot off. While Claimant took approximately two days off from work, the swelling eventually subsided, and he returned to work for approximately two to three weeks. A second swelling episode occurred in June 2017, this time in Claimant's hands, which prevented him from driving, and so Employer assigned him office duties. It is at this point that Claimant saw Claimant's Expert, who prescribed Prednisone and referred Claimant to David M. Pugliese, D.O., a rheumatologist.

Dr. Pugliese examined Claimant and authored a note in August 2017 explaining that Claimant was under his care for inflammatory arthritis, which interfered with Claimant's ability to safely work, and suggesting that Claimant be given two to four weeks off from work. (*Id.*) Dr. Pugliese referred Claimant to an immunologist, Yoon Kim, D.O., who saw Claimant twice, ordered bloodwork, and adjusted Claimant's medications. Claimant testified that swelling like that which

3

occurred in his feet and hands occurred elsewhere, including his tongue, mouth, esophagus, and throat. As a result, Claimant carries an Epinephrine pen and Prednisone. "Claimant has not returned to work in any capacity since August 30, 2017." (*Id*.) Claimant identified various photographs of his body, including one showing the injury to his leg "approximately two weeks after the [laceration] occurred," (R.R. at 105a; R.R. at 149a), and others showing swelling in various parts of Claimant's body, (*id*.at 117a-25a).

Claimant's Expert testified by deposition as follows.[2] Claimant has been his patient since approximately 2014, and, with respect to Claimant's work accident, Claimant's Expert first saw Claimant on June 15, 2017, at which time Claimant complained of severe swelling in both hands. Claimant reported having a work injury that resulted in a leg wound, which ultimately became infected. Claimant's Expert stated: "I do believe he did have an infection based upon [Employer's Expert's] description o[f] the laceration and the fact that [Employer's Expert] started him on dual antibiotic therapy . . . ." (FOF ¶ 10 (quoting Claimant's Expert's Deposition (Dep.) at 12, R.R. at 182a).) After a second visit on July 5, 2017, at which Claimant complained of tongue swelling, shortness of breath, and difficulty swallowing, Claimant's Expert diagnosed Claimant with angioedema "presumably due to an adverse reaction to [the medication] Plaquenil." (*Id*. ¶ 11 (quoting Claimant's Expert's Dep. at 13, R.R. at 183a).) Though the diagnosis of angioedema remained unchanged, "the [etiology] has not inasmuch as [C]laimant has been off Plaquenil ever since and the angioedema has persisted." (*Id*.) Claimant saw Claimant's Expert two more times – on September 29, 2017, and March 13, 2018 – and was examined by several specialists, including Dr. Pugliese, Dr. Kim, and Amit

---

[2] Claimant's Expert's deposition testimony is summarized in Findings of Fact 8-17, and the transcript of that deposition testimony is found at pages 172a-221a of the reproduced record.

Sharma, M.D., an infectious disease doctor, whose office notes Claimant's Expert reviewed.[3]

Claimant's Expert expressed his opinion "that [C]laimant has angioedema with no causative bacteria or [etiology], apparently, according to the immunologist." (*Id.* ¶ 14.)  Specifically, Claimant's Expert testified:

> Something is flaring it up, and we have a suspicion and a reasonable certainty that, from the timeline that I have been taking care of [Claimant], I believe his issues started shortly after his leg injury, and have never totally resolved, and have flared-up off and on since that time.

(*Id.* (quoting Claimant's Expert's Dep. at 21, R.R. at 191a).)  He stated that Claimant had none of these problems before March 21, 2017.  On direct examination, Claimant's Expert testified as follows:

> Q.     As a result of your treatment of [Claimant], your understanding of his injury, also the review of [Employer's Expert's] records, and, by the way, the review of that photograph [showing the laceration], do you have an opinion within a reasonable degree of medical certainty as to whether or not the injury which caused the laceration also resulted in an infection?
>
> A.     It's my opinion that that injury did relate, did cause an infection to [Claimant].
>
> Q.     And, Doctor, the next opinion based on your treatment and treatment of referral physicians within your medical group, and your occasion to review their opinions, and also your occasion to continue to treat [Claimant], do you have an opinion within a reasonable degree of medical certainty as to, number one, the diagnosis, which I believe you already stated, but you can state it again.
>
> A.     Angioedema.

---

[3] On the day of his deposition, Claimant's Expert reviewed for the first time the office notes of Employer's Expert.  (FOF ¶ 9.)

5

Q.     And, Doctor, based on the history, the medical background as you understood [Claimant's] condition to be prior to March 21, 2017, up until today's date, whether or not there's a connection between his injury, the laceration, infection, and the angioedema?

A.     I believe there is a connection between the infection and the angioedema, as it never was present before, and it surfaced fairly soon after his injury.

Q.     Is that opinion based within a reasonable degree of medical certainty?

A.     Yes, it is.

(R.R. at 192a-93a.)  While acknowledging that angioedema can result from a variety of causes, Claimant's Expert believed causes other than the infection had been ruled out by the specialists to which Claimant was referred.  (FOF ¶ 15; R.R. at 194a.)[4]  In response to the question of whether Claimant is "disabled for driving tractor-trailer," Claimant's Expert responded:

I would consider him disabled, because when he has these flare-ups, they are potentially life-threatening, as the tongue can swell, he can get short of breath, his hands can swell substantially to the point where it does inhibit safe control of steering wheels and reaction times and things like that, in my opinion.

(R.R. at 194a.)

On cross-examination, Claimant's Expert testified that, while he reviewed a photograph of the laceration of Claimant's leg, he had not seen other photographs showing Claimant's swollen feet, lips, tongue, and the rashes on his body.

---

[4] On redirect examination, Claimant's Expert was questioned whether causative factors other than infection had been ruled out, to which he answered:  "The factors that I would have thought of as an internist?  Yes.  I would have deferred to the immunologist to make sure all the other causes would have been ruled out."  (R.R. at 209a.)

6

Claimant's Expert was presented with a September 8, 2017 note written by Dr. Pugliese, which Claimant's Expert read into the record:

> [Claimant] has an inflammatory arthritis and has asked if it could be related to an injury and infection that he obtained at work. I've explained to him that there are many theories about the development of autoimmune disease. While one of them does suggest that a genetically predisposed person could have expression of his or her autoimmunity triggered by infection/trauma or another in[citing] event, there's no way to prove cause and effect. The temporal profile in this case does fit the pattern, but, [] again, there's no way to prove causality.

(FOF ¶ 16 (quoting Claimant's Expert's Dep. at 38-39, R.R. at 208a-09a).) On redirect examination, when asked whether an infection is an accepted cause of angioedema, Claimant's Expert stated that "[i]t could be one, yes." (R.R. at 209a.) In addition, Claimant's Expert was presented with another note from Dr. Pugliese, dated January 3, 2018, which he read into the record:

> [Claimant] has developed severe angioedema that is related to an infection that he got at work. The angioedema has been persistent and has interfered with his ability to at times swallow and even breath[e]. In addition to the angioedema[,] there has been pain and fatigue and rash. He is currently unable to work as a result of this. He is being referred to multiple specialists, including immunology and infectious disease in addition to my care in rheumatology. He's on multiple medications to help manage this, but to date we have not been able to control the disease.
>
> It is my opinion that[,] within a certain degree of medical certainty[,] [Claimant's] decline is a direct result of the infection that he got in March.

(FOF ¶ 17 (quoting Claimant's Expert's Dep. at 42-43, R.R. at 212a-13a).)

7

*C. Employer's Evidence*

Employer's Expert examined Claimant on four occasions in March and April of 2017 and testified by deposition as follows.[5]  On March 21, 2017, the date of Claimant's injury, Employer's Expert described Claimant's laceration as superficial in that the skin was together, it was not bleeding, and "there was no significant manifestation of an infective process." (*Id.* ¶ 18.)  Employer's Expert cleaned the laceration with Betadine and peroxide, dressed the wound with a bandage, and prescribed Claimant antibiotics out of concern for "the potential of infection" given where Claimant fell.  (R.R. at 294a-95a.)  In an unscheduled visit 48 hours later, Claimant presented with increased pain and concern about drainage from the wound.  Employer's Expert noticed "no significant manifestation of an infection." (*Id.* at 296a.)  At Claimant's third visit to Employer's Expert, Claimant reported that the drainage was improving but the discomfort in his leg persisted.  Employer's Expert directed Claimant to finish his antibiotics and return in a week.  At Claimant's final visit on April 3, 2017, Employer's Expert noted good scab formation, minimal scarring, and found no evidence of an infective process.  "[H]is impression . . . was that the laceration healed nicely"; he found no need for further treatment.  (FOF ¶ 21.)

Employer's Expert "[did not] believe that any autoimmune phenomenon [is] [] related to [Claimant's] work injury . . . ." (*Id.* ¶ 23 (quoting Employer's Expert's Dep. at 26, R.R. at 307a).)  Employer's Expert explained that, in order to trigger the expression of autoimmunity, "the trauma needs to be significant enough or the medical process [must] be [] severe enough for the body to recognize itself as foreign and develop a significant immune or autoimmune response to itself." (*Id.* (quoting

---

[5] Employer's Expert's deposition testimony is summarized in Findings of Fact 18-25, and the transcript of that deposition testimony is found at pages 282a-343a of the reproduced record.

Employer's Expert's Dep. at 27, R.R. at 308a).) Here, Employer's Expert opined that the trauma Claimant experienced was "not significant enough to create a[n autoimmune] response." (R.R. at 309a.)

When asked on cross-examination whether Claimant had an infection, Employer's Expert responded: "I don't believe he did." (FOF ¶ 25 (quoting Employer's Expert's Dep. at 40-41, R.R. at 321a-22a).) According to Employer's Expert's notes pertaining to his physical examination of Claimant, there was good healing, no drainage, no erythema, and no induration. Based on Employer's Expert's interpretation of Claimant's treatment records, while "there was a concern of an autoimmune disease, as well as inflammatory arthritide, [] the actual diagnosis . . . was [not] stated." (*Id.* (quoting Employer's Expert's Dep. at 45, R.R. at 326a).)

### D. WCJ Decision

The WCJ summarized the parties' relevant evidence as follows. Claimant cut his leg while on the job, (*id.* ¶ 26a), and thereafter experienced bouts of swelling, (*id.* ¶¶ 26d-26f), which he did not experience prior to his work injury, (*id.* ¶ 26g). Based on that history, and Claimant having been prescribed antibiotics and reseen by Employer's Expert, Claimant's Expert "gathered [C]laimant had an infection." (*Id.* ¶ 26h.) Claimant's Expert opined that "there is a connection between the infection and [Claimant's diagnosis of] angioedema as it was never present before and surfaced soon after his injury." (*Id.* ¶ 26j.) The symptoms Claimant experiences are "potentially life threatening" and Claimant is thus "disabled from returning to work . . . ." (*Id.* ¶ 26k.) Employer's Expert saw Claimant four times following his injury, at the first visit characterizing Claimant's laceration as "superficial," (*id.* ¶ 26p), and at the second visit noting drainage from Claimant's leg, which Claimant and Employer's Expert had some concern about, (*id.* ¶ 26q). Claimant experienced

9

continued discomfort, but at Claimant's final visit, Employer's Expert observed that Claimant's laceration "healed nicely and scab formation was strong." (*Id*. ¶ 26s.) Employer's Expert "does not believe [C]laimant's autoimmune phenomenon is related to [C]laimant's work injury" because the inciting trauma must be severe, and here "[C]laimant's trauma was mild in nature." (*Id*. ¶ 26t.)

After considering the evidence, the WCJ "accepted as most credible and convincing the testimony of [C]laimant . . . as well as [Claimant's Expert]." (*Id*. ¶ 27.) The WCJ attached significant weight to the fact that Claimant's Expert, having seen Claimant as far back as 2014, "was clearly in a position to offer credible testimony that [C]laimant did not have any of the types of problems or symptoms that [Claimant's Expert] found [C]laimant to have prior to March 21, 2017." (*Id*. ¶ 28.) Unlike Employer's Expert, Claimant's Expert examined Claimant and tracked his symptoms in the months following Claimant's injury when he began experiencing swelling. Moreover, the WCJ found credible Claimant's Expert's statement that "something is flaring up, and we have a suspicion and reasonable certainty that . . . [Claimant's] issues started shortly after his leg injury and have never totally resolved . . . ." (*Id*. (quoting Claimant's Expert's Dep. at 21, R.R. at 191a).) The WCJ acknowledged the seemingly inconsistent nature of Dr. Pugliese's opinions – in his September 8, 2017 letter he stated there is no way to prove causality between an infection and the expression of autoimmunity, while in his January 3, 2018 letter he stated that Claimant's angioedema was caused by the infection resulting from Claimant's work-related injury. (*Id*.) The WCJ concluded:

> The challenge by [] [Employer] herein as to the sufficiency of causality was correctly argued. While there is, of course, no specific evidence of what substance entered [] [C]laimant's system resultant from having a laceration on his left lower leg with a piece of metal at a landfill, this Judge thinks [] [C]laimant's [Expert], . . . and ultimately Dr. Pugliese

10

eventually within his January 3, 2018 report[,] gave consideration to the same and were still able to unequivocally opine that [C]laimant developed severe angioedema that was related to the infection he got at work . . . .

(*Id.*)

The WCJ "rejected as not credible" Employer's Expert's opinions. (*Id.* ¶ 27.) In particular, the WCJ found Employer's Expert's opinion that Claimant's injury was not significant enough to cause an autoimmune response unsupported by the record because Employer's Expert "has nothing to identify or establish the precipitating agent or trauma at a landfill that entered [] [C]laimant's system through a piece of metal." (*Id.*) The WCJ noted that Employer's Expert examined Claimant on only four occasions over a period of less than two weeks and, though Employer's Expert reviewed Claimant's medical records prior to his deposition, a full year had elapsed since Employer's Expert saw Claimant, during which time Claimant had many treatments. It was disingenuous, according to the WCJ, for Employer's Expert to state, based upon reviewing Claimant's treatment records between April 3, 2017, and his deposition on May 3, 2018, that no one had a "firm grasp on establishing a working diagnosis for [] [C]laimant." (*Id.* ¶ 28.)

Based on his credibility determinations and factual findings, the WCJ concluded that Claimant had met his burden of proving a causal connection between the March 21, 2017 work incident, a laceration that became infected resulting in angioedema, which caused his ongoing disability. (WCJ Decision, Conclusion of Law ¶ 2.) Therefore, the WCJ granted the Claim Petition. Employer appealed to the Board.

11

*E. Board Opinion*

In its appeal, Employer argued the WCJ's Decision was not supported by substantial evidence and was based on equivocal opinions. Employer maintained in its appeal that Claimant's burden of proof on causation was assumed, shifting the burden on Employer to disprove causation. The WCJ also erred, according to Employer, by granting Claimant ongoing disability due to the "implied theory" of "possible recurrence." (Employer's Appeal, R.R. at 50a.)

The Board affirmed the WCJ's Decision. The Board held that the WCJ did not err by crediting Claimant's Expert's opinions over the contrary opinions of Employer's Expert and that Claimant was able to meet his burden of proof based on the testimony of Claimant's Expert and Dr. Pugliese's 2018 note, which "tied Claimant's development of angioedema to his infection from the work incident." (Board's Opinion at 3, 5.) According to the Board, "the substantial, competent evidence of record supports the fact Claimant sustained a work-related injury that resulted in a disability." (*Id.* at 6.) Moreover, the Board held that Claimant's Expert's testimony was not equivocal, and the WCJ did not err in relying upon it because, while Employer "ma[de] arguments taking various parts of [Claimant's Expert's] testimony out of context, review of it as a whole clearly shows [Claimant's Expert's] unequivocal opinion that Claimant's angioedema was caused by his work-related injury." (*Id.* at 7.) Employer now petitions this Court for review.[6]

---

[6] This Court's "review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

12

**II. Appeal to this Court**

Employer raises three issues on appeal. Employer contends that the WCJ's finding that Claimant's laceration became infected is not supported by substantial evidence. Employer also argues that Claimant's Expert's opinion that the infected laceration caused Claimant's angioedema is equivocal and thus incompetent. Employer last maintains that the Board erred by affirming the WCJ's Decision granting ongoing disability benefits under the premise of "possible recurrence." (Employer's Brief (Br.) at 32.)

This being a claim petition proceeding, Claimant bears the burden of establishing all of the elements necessary to support an award of workers' compensation benefits, including the existence of an injury and disability, and a causal relationship between the disability and the work incident. *Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Thomas)*, 725 A.2d 873, 876 (Pa. Cmwlth. 1999). Disability is the loss of earnings or earning power that is caused by a work-related injury. *Sch. Dist. of Phila. v. Workers' Comp. Appeal Bd. (Lanier)*, 727 A.2d 1171, 1172 (Pa. Cmwlth. 1999). Where the causal relationship between the work incident and the injury is not obvious, unequivocal medical evidence is necessary to establish that relationship. *Roundtree v. Workers' Comp. Appeal Bd. (City of Philadelphia)*, 116 A.3d 140, 145 (Pa. Cmwlth. 2015) (citations omitted). We now address Employer's arguments as to why Claimant did not meet his burden of proof.

*A. Substantial Evidence*

**1. Parties' Arguments**

Employer argues that the Board improperly credited Claimant's Expert's opinion that Claimant's laceration became infected because the opinion relied on

"insufficient evidence." (Employer's Br. at 27.) Employer focuses on the following exchange from Claimant's Expert's deposition:

> Q. As a result of your treatment of [Claimant], your understanding of his injury, also the review of [Employer's Expert's] records, and, by the way, the review of th[e] photograph [showing Claimant's laceration],[] do you have an opinion within a reasonable degree of medical certainty as to whether or not the injury which caused the laceration also resulted in an infection?
>
> A. It's my opinion that that injury did relate, did cause an infection to [Claimant].

(*Id.* at 23-24 (quoting Claimant's Expert's Dep. at 22, R.R. at 192a) (footnote omitted).) According to Employer, this exchange illustrates that Claimant's Expert's opinion was based on: (1) Claimant's "lay opinion that his leg became infected[;]" (2) Claimant's Expert's treatment of Claimant; (3) Claimant's Expert's review of Employer's Expert's records; and (4) Claimant's Expert's review of a photograph showing Claimant's laceration. (*Id.* at 22-26.)

Employer argues that an opinion regarding the presence of an infection may only be given by an expert witness, and because Claimant's Expert relied on Claimant's "lay opinion" as to the issue of infection, the WCJ should not have credited Claimant's Expert's opinion that Claimant's leg was infected. (*Id.* at 22-23.) Moreover, Employer submits that, to the extent Claimant's Expert's opinion was based on his treatment of Claimant, the opinion should not be credited because Claimant's Expert did not treat Claimant until three months after the work-related injury, and, by that time, the laceration had healed. (*Id.* at 24.) And, according to Employer, Claimant's Expert could not have formed his opinion by reviewing Employer's Expert's records "because those records flatly refute the existence of an

14

infection." (*Id.*) Further, Claimant's Expert's testimony regarding the photograph of Claimant's laceration is unclear:

> Q. And, Doctor, upon the review of that photograph, does that sort of buttress your opinion regarding the severity of the laceration and/or infection?
>
> A. Yes, it does.

(*Id.* at 26 (quoting Claimant's Expert's Dep. at 11-12, R.R. at 181a-82a).) According to Employer, Claimant's Expert's answer was unclear – to which question was his answer addressed?

In summary, Employer claims that the "only evidence upon which the [WCJ] credited Claimant's Expert's opinion that [Claimant's] laceration became infected was [Claimant's] self-serving lay opinion that he had an infection and the affirmative response of [Claimant's Expert] to a compound, unclear question." (*Id.* at 26-27.) That evidence, Employer contends, does not "rise up to the threshold of being substantial evidence." (*Id.* at 27.)

Claimant responds that the WCJ's finding that Claimant's leg wound became infected is supported by substantial evidence. The finding was based on Claimant's Expert's opinion, and "it was the WCJ's prerogative to credit [Claimant's Expert's] opinion over that of [Employer's Expert's], which [the WCJ] did." (Claimant's Br. at 15.) According to Claimant, "a reasonable mind would find this evidence ([Claimant's Expert's] opinion as to causality and ongoing disability) adequate to support the WCJ's findings and conclusions . . . ." (*Id.*)[7]

---

[7] Claimant argues that Employer waived its argument that the WCJ did not issue a "reasoned decision." (Claimant's Br. at 9.) However, nowhere in Employer's brief is such an argument advanced. Accordingly, we need not consider Claimant's waiver argument. In addition, Claimant spends considerable time in his brief defending the WCJ's credibility determinations. However, in its reply brief, Employer is clear that it is not contesting those determinations. "The

## 2. Analysis

In reviewing a substantial evidence[8] challenge, we "consider the evidence as a whole, view the evidence in the light most favorable to the party [that] prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in" that party's favor. *Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (quotation omitted). "[W]here both parties present evidence, it does not matter that there is evidence in the record [that] supports a" contrary finding; the only question is whether there is evidence that supports the findings that were made. *McCabe v. Workers' Comp. Appeal Bd. (Dep't of Revenue)*, 806 A.2d 512, 515 (Pa. Cmwlth. 2002). "The WCJ is the ultimate fact finder and has complete authority for making all credibility" and evidentiary weight determinations. *Rife v. Workers' Comp. Appeal Bd. (Whitetail Ski Co.)*, 812 A.2d 750, 755 (Pa. Cmwlth. 2002). It is well-settled that a "WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted." *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1156 (Pa. Cmwlth. 1998).

Although Employer argues there is insufficient evidence to support the WCJ's finding that Claimant's laceration became infected, we disagree. Claimant's Expert opined that Claimant's laceration became infected based on: (1) Claimant's report about his work-related injury and subsequent infection; (2) Employer's Expert's use of dual antibiotic therapy to treat Claimant; and (3) a photograph showing

---

[WCJ's] credibility determinations are not a question before this Court, and as a result, should not be considered in deciding the instant matter." (Employer's Reply Br. at 1.) Accordingly, we need not evaluate the WCJ's credibility determinations.

[8] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

Claimant's laceration. Employer contends that this evidence is either insufficient to support that opinion or flatly refutes that opinion and, therefore, the WCJ's finding is unsupported.

Employer first argues that an opinion regarding the presence of an infection may only be given by an expert witness, and because Claimant's Expert relied on Claimant's "lay opinion" as to the issue of infection, the WCJ should not have credited Claimant's Expert's opinion that Claimant's leg was infected. (Employer's Br. at 22-23.) Contrary to Employer's argument, it was not necessary for Claimant to be a medical expert to report to Claimant's Expert that his work-related laceration became infected, and it was not improper for Claimant's Expert to have relied on Claimant's report in rendering his ultimate opinion. Claimant's Expert's medical opinion was based on multiple factors, including Claimant's **factual** report that he had "pus [] flowing out of his leg for a day or two [after the injury], . . . had to be re-seen [by Employer's Expert], and . . . was on antibiotics." (R.R. at 181a.) From this information, which is corroborated by Employer's Expert's testimony, Claimant's Expert "gathered [Claimant] had an infection." (*Id.*) In addition, Claimant's Expert's review of a photograph showing Claimant's laceration approximately two weeks after the incident, (*id.* at 149a), to which no objection was lodged, buttressed Claimant's Expert's opinion that Claimant's leg was infected, (*id.* at 181a-82a.) Thus, Employer's focus on "[Claimant's] subjective lay opinion of infection" and the purported "parameters of th[e] legal standard" applicable thereto, (Employer's Br. at 22), misses the mark because Claimant's Expert did not base his opinion merely on Claimant's opinion as to whether he had had an infection.

Moreover, Employer's argument that "[Claimant's Expert's] review of [Employer's Expert's] records could not be the basis for finding that [Claimant] had

17

an infection because those records flatly refute the existence of an infection" misconstrues the evidence. (*Id.* at 24.) While Employer points out language in Employer's Expert's records tending to suggest an infection was not present, (*id.* at 25), there is also language indicating the contrary, including Employer's Expert's prescribing of Augmentin and Doxycycline Monohydrate, (R.R. at 272a-73a), noting that, after Claimant's second visit on March 23, 2017, there was no "**significant** evidence of an infective process" and no "outward signs of **significant** infection," (*id.* at 275a-76a) (emphasis added)), and that, as of April 3, 2017, "**the infection is resolved** and [Claimant] does not require any further treatment," (*id.* at 280a (emphasis added)). Thus, when considered as a whole, Employer's Expert's records do not "flatly refute the existence of an infection," (Employer's Br. at 24), but rather are, at most, ambiguous on that issue, and, as the ultimate fact finder, the WCJ had "complete authority for making all credibility" and evidentiary weight determinations. *Rife*, 812 A.2d at 755.

Further, Employer's challenge to Claimant's Expert's testimony regarding the photograph showing Claimant's laceration is not persuasive. At his deposition, Claimant's Expert was asked to review Claimant's exhibit 3, the photograph Claimant took of the laceration two weeks after the work incident and, having done so, testified:

> Q.    And, Doctor, do you know whether or not he had an infectious process going on or can you tell that by your exam?
>
> A.    Subjectively what he had described to me . . . is that he was injured at work. He told me that he presented to the work doctor, it was cleaned out, and he indicated pus was flowing out of his leg for a day or two later. He had to be re-seen, and [] he was on antibiotics. From that I gathered he had an infection.

18

Q. And, Doctor, upon review of that photograph, does that sort of buttress your opinion regarding the severity of the laceration and/or infection?

A. Yes, it does.

Q. And in review [of Employer's Expert's] note, do you have any cause to believe that [Claimant] did not have an infection?

A. No, I do not. I'm sorry. I do believe he did have an infection based on [Employer's Expert's] description of the laceration and the fact that [Employer's Expert] started [Claimant] on dual antibiotic therapy or Augmentin and Doxycyline.

(R.R. at 180a-82a.) Employer isolates the part of this exchange wherein Claimant's Expert is asked whether the photograph "buttress[es] [his] opinion regarding the severity of the laceration and/or infection," and Claimant's Expert answers "[y]es, it does." (Employer's Br. at 26.) In so doing, Employer argues that Claimant's Expert "did not provide any explanation; he merely gave an affirmative response to an unclear compound question . . . ." (*Id.*) However, when this passage is considered in context with the questioning and testimony that occurred before and after it, which was concerned solely with whether an infection was present, it was reasonable for the WCJ to infer that Claimant's Expert's answer addressed the infection portion of the question.

Accordingly, because Claimant's Expert's opinion was not based on an improper lay opinion and was otherwise supported, the WCJ's crediting of that opinion was not "arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008). And, because "a reasonable mind might accept" Claimant's Expert's opinion "as adequate" to support the finding that Claimant's laceration

19

became infected, the challenged finding of fact is supported by substantial evidence. *City of Philadelphia v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

### B. Equivocation

#### 1. Parties' Arguments

Employer contends that Claimant has not met his burden of proving a causal connection between his disabling injury – angioedema – and his work-related laceration because the expert testimony Claimant offered to establish that connection is equivocal. Employer posits four reasons why Claimant's Expert's testimony is equivocal.

First, in response to the question of whether an infection is an accepted cause of angioedema, Claimant's Expert stated that "[i]t could be one, yes." (Employer's Br. at 28 (quoting R.R. at 209a).) This testimony, according to Employer, is equivocal as a matter of law because "[s]uch [an] expert opinion that it is conceivable that a substance **could** cause or may have caused an effect does not constitute unequivocal medical testimony and is not competent evidence to support a finding that any such effect occurred." (*Id.* (quoting *BJ's Wholesale Club v. Workers' Comp. Appeal Bd. (Pearson)*, 43 A.3d 559, 565 (Pa. Cmwlth. 2012) (emphasis in original)).)

Second, Claimant's Expert relied on the medical opinion of Dr. Pugliese, who expressed "absolutely equivocal opinions," (Employer's Br. at 30), by opining in one note that "there's no way to prove causality" between an infection and the expression of autoimmunity, (*id.* at 29 (quoting R.R. at 208a-09a)), and, in a second, later note, stating that "[Claimant] has developed severe angioedema that is related to an infection that he got at work[,]" (*id.* at 29-30 (quoting R.R. at 212a)). Thus,

20

argues Employer, "any opinion provided by Dr. Pugliese that [Claimant's Expert] would have relied upon would have been equivocal as a matter of law." (*Id*. at 30.)

Third, Claimant's Expert's opinion regarding causation is equivocal. Employer cites Claimant's Expert testimony as follows:

> Q. Okay. And at that point in time were **you** able to come to a medical diagnosis regarding what was going on with [Claimant]?
>
> A. We have a working diagnosis of angioedema **with no causative bacteria or etiology** . . . .

(*Id*. at 30 (quoting Claimant's Expert's Dep. at 21, R.R. at 191a) (emphasis in original).) Employer argues that "[t]he fact that [Claimant's Expert] later opines to within a reasonable degree of medical certainty that an infection had caused the angioedema, totally contradicts [t]his statement." (*Id*.)

Last, Claimant's Expert's testimony is equivocal because, Employer argues, "it is based on nothing more than the proximity of the injury and onset of angioedema." (*Id*. at 31.) In support of this assertion, Employer cites the following testimony:

> Q. And, Doctor, based on the history, the medical background as you understood [Claimant's] condition to be prior to March 21, 2017, up until today's date, whether or not there's a connection between his injury, the laceration, infection, and the angioedema?
>
> A. I believe there is a connection between the infection and the angioedema, as it never was present before, and it surfaced fairly soon after his injury.

(*Id*. (quoting R.R. at 193a).) Employer contends that "[t]estimony is equivocal when the medical expert merely assumes that an injury is work-related based upon temporal proximity to a work event." (*Id*. at 31-32 (quoting *Moyer v. Workers'*

21

*Comp. Appeal Bd. (Pocono Mountain Sch. Dist.)*, 976 A.2d 597, 599 (Pa. Cmwlth. 2009)) (alteration in original).)

Claimant responds that Claimant's Expert testified unequivocally that Claimant's work-related laceration became infected and that infection caused Claimant's disabling injury – angioedema. Claimant contends that ample caselaw supports this position because Claimant's Expert testified that it was his "professional opinion within a reasonable degree of medical certainty that the work-related laceration that Claimant sustained . . . resulted in an infection and, later, angioedema . . . ." (Claimant's Br. at 4.) Acknowledging that Claimant's Expert explained that infection is not the only cause of angioedema, Claimant points out that Claimant's Expert nonetheless "opined within a reasonable degree of medical certainty that it was his professional opinion that the angioedema Claimant was experiencing was causally related to [his] infection . . . ." (*Id*. at 6.)

### 2. Analysis

When unequivocal medical evidence is necessary, "the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in [the witness's] professional opinion the result in question did come from the assigned cause." *Berks Cnty. Intermediate Unit v. Workmen's Comp. Appeal Bd. (Rucker)*, 631 A.2d 801, 804 (Pa. Cmwlth. 1993). In determining whether testimony is equivocal, "we examine the testimony of a witness as a whole and do not take words or phrases out of context." *Bemis v. Workers' Comp. Appeal Bd. (Perkiomen Grille Corp.)*, 35 A.3d 69, 72 (Pa. Cmwlth. 2011). Medical evidence that is less than positive or is based on possibilities is equivocal and is not legally competent evidence that establishes the necessary causal relationship. *Potere v. Workers' Comp. Appeal Bd. (Kemcorp)*, 21 A.3d 684, 690-91 (Pa. Cmwlth. 2011).

"However, the law does not require every utterance which escapes the lips of a medical witness on a medical subject to be certain, positive, and without reservation or exception." *Bemis*, 35 A.3d at 72. A medical opinion is not considered equivocal simply because the witness "use[s] [] words such as 'probably,' 'likely,' and 'somewhat' . . . so long as the testimony, read in its entirety, is unequivocal and the witness does not recant the opinion or belief first expressed." *Id.* "Whether an expert's opinion is competent is a question of law subject to plenary review." *Kriebel*, 29 A.3d at 769.

Applying these principles to Claimant's Expert's testimony in its entirety, his testimony that Claimant's work-related laceration became infected and that this infection caused Claimant's angioedema is unequivocal and, therefore, competent to support the WCJ's findings. On direct examination, Claimant's Expert testified as follows:

> Q. As a result of your treatment of [Claimant], your understanding of his injury, also the review of [Employer's Expert's] records, and, by the way, the review of that photograph [showing the laceration], do you have an opinion within a reasonable degree of medical certainty as to whether or not the injury which caused the laceration also resulted in an infection?
>
> A. It's my opinion that that injury did relate, did cause an infection to [Claimant].
>
> Q. And, Doctor, the next opinion based on your treatment and treatment of referral physicians within your medical group, and your occasion to review their opinions, and also your occasion to continue to treat [Claimant], do you have an opinion within a reasonable degree of medical certainty as to, number one, the diagnosis, which I believe you already stated, but you can state it again.
>
> A. Angioedema.

Q. And, Doctor, based on the history, the medical background as you understood [Claimant's] condition to be prior to March 21, 2017, up until today's date, whether or not there's a connection between his injury, the laceration, infection, and the angioedema?

A. I believe there is a connection between the infection and the angioedema, as it never was present before, and it surfaced fairly soon after his injury.

Q. Is that opinion based within a reasonable degree of medical certainty?

A. Yes, it is.

(R.R. at 192a-93a.) This exchange is a clear expression of "[Claimant's Expert's] professional opinion [that] the result in question[, angioedema,] did come from the assigned cause," *Berks County Intermediate Unit*, 631 A.2d at 804, and it is sufficient to establish a causal relationship between the injury and the work incident, *Giant Eagle, Inc.*, 725 A.2d at 876. *See also Phila. Coll. of Osteopathic Med. v. Workmen's Comp. Appeal Bd. (Lucas)*, 465 A.2d 132, 135 (Pa. Cmwlth. 1983) ("[A]s to the facts which a claimant must prove by medical evidence, it is sufficient that [the claimant's] medical expert, after providing a foundation, testify that in [the expert's] professional opinion or that [the expert] believes or that [the expert] thinks the facts exist.").

Employer's arguments would have us enforce an equivocality standard that permits no room for expressions of doubt, but that is not the law. "[T]he law does not require every utterance which escapes the lips of a medical witness on a medical subject to be certain, positive, and without reservation or exception." *Bemis*, 35 A.3d at 72; *see also Phila. Coll. of Osteopathic Med.*, 465 A.2d at 134-35 ("Certainly it is not the law . . . that every utterance which escapes the lips of a medical witness on a medical subject, must be certain, positive, and without reservation, exception,

24

or peradventure of a doubt."). Thus, a medical opinion is not considered equivocal simply because the witness uses words such as "probably," "likely," and "somewhat," "so long as the testimony, read in its entirety, is unequivocal and the witness does not recant the opinion or belief first expressed." *Bemis*, 35 A.3d at 72.

For this reason, we reject Employer's argument, relying on *BJ's Wholesale Club*, that Claimant's Expert's statement that an infection "could be" a cause of angioedema rendered Claimant's Expert's entire opinion "equivocal as a matter of law, even if [Claimant's Expert] had earlier said the 'magic words'[] that the infection led to [Claimant's] development of angioedema." (Employer's Br. at 28 (footnote omitted).) In *BJ's Wholesale Club*, we held that an expert's testimony was equivocal because it was based **entirely** on possibilities – the expert's testimony regarding causation was replete with words such as "can," "conceivable," and "could." 43 A.3d at 565-66. Here, in contrast, Claimant's Expert's testimony, read in its entirety, is positive on the issues of whether Claimant's laceration caused an infection which in turn led to him developing angioedema, and Claimant's Expert's single expression of mere possibility is insufficient to render his entire opinion equivocal.

Furthermore, Claimant's Expert's medical opinion is not equivocal simply because he considered the medical opinions of other physicians whose opinions were arguably inconsistent or differed from his. Employer contends that Dr. Pugliese, whose opinions Claimant's Expert relied upon, expressed "absolutely equivocal opinions," (Employer's Br. at 30), as illustrated in Dr. Pugliese's notes dated September 18, 2017, and January 3, 2018. However, the seemingly contradictory[9]

_____

[9] It is unclear from the record if something changed Dr. Pugliese's opinion in the months between September 2017 and January 2018, particularly given the number of specialists Claimant had been seeing.

nature of Dr. Pugliese's opinions has no bearing on the equivocality of **Claimant's Expert's own testimony** regarding causation. Claimant's Expert did not testify that he shared the exact same views as Dr. Pugliese along the same timeline that Dr. Pugliese held them. Instead, Claimant's Expert testified that, within a reasonable degree of medical certainty, "there is a connection between the infection and the angioedema," (R.R. at 193a), and other causes – hereditary, cold air induced causes, insect borne, and medication – had been ruled out.

Finally, Employer points out Claimant's Expert's own "equivocal" deposition testimony, which Employer cites in the following manner:

> Q. Okay. And at that point in time were **you** able to come to a medical diagnosis regarding what was going on with [Claimant]?
>
> A. We have a working diagnosis of angioedema **with no causative bacteria or etiology** . . . .

(Employer's Br. at 30 (quoting R.R. at 191a) (emphasis in original).) Employer argues that "[t]he fact that [Claimant's Expert] later opines [] within a reasonable degree of medical certainty that an infection had caused the angioedema, totally contradicts his statement." (*Id.*) Employer doubles down in its reply brief, arguing that these "two statements sat next to each other are jaw-droppingly contradictory and undoubt[edly] 100% equivocal as a matter of law." (Employer's Reply Br. at 2.) However, Employer fails to cite the full deposition testimony, in which Claimant's Expert expressed his opinion that Claimant has angioedema "with no causative bacteria or etiology, **apparently, according to the immunologist**." (R.R. at 191a (emphasis added).) In addition, immediately after this answer, Claimant's Expert testified:

Something is flaring it up, and we have a suspicion and a reasonable certainty that, from the timeline that I have been taking care of [Claimant], I believe his issues started shortly after his leg injury, and have never totally resolved, and have flared-up off and on since that time.

(*Id.*) Read in its entirety, this portion of the deposition testimony does not reveal, as Employer submits, Claimant's Expert's opinion that Claimant's angioedema was not caused by a bacterial infection. (*See* Employer's Reply Br. at 2.) Instead, it shows Claimant's Expert's understanding of the **immunologist's opinion** and Claimant's Expert's "reasonable certainty" that Claimant's autoimmune issues began shortly after his injury. Whether or not the immunologist believed that a bacterial infection was the cause of Claimant's angioedema has no bearing on the equivocality of **Claimant's Expert's own testimony** regarding causation.

We also reject Employer's argument, relying on *Moyer*, that Claimant's Expert's opinion is equivocal because "it is based on nothing more than the proximity of the injury and onset of angioedema." (Employer's Br. at 31.) This Court in *Moyer* stated that "[t]estimony is equivocal when the medical expert **merely assumes** that an injury is work-related based on temporal proximity to a work event." *Moyer*, 976 A.2d at 599 (emphasis added). However, Claimant's Expert did not merely assume on the basis of timing that Claimant's work-related injury caused the angioedema. Again, it is important to read Claimant's Expert's testimony in context. Directly preceding the exchange that Employer relies on is the following:

Q.     As a result of your treatment of [Claimant], your understanding of his injury, also the review of [Employer's Expert's] records, and, by the way, the review of that photograph [showing the laceration], do you have an opinion within a reasonable degree of medical certainty as to whether or not the injury which caused the laceration also resulted in an infection?

27

A. It's my opinion that that injury did relate, did cause an infection to [Claimant].

Q. And, Doctor, the next opinion based on your treatment and treatment of referral physicians within your medical group, and your occasion to review their opinions, and also your occasion to continue to treat [Claimant], do you have an opinion within a reasonable degree of medical certainty as to, number one, the diagnosis, which I believe you already stated, but you can state it again.

A. Angioedema.

(R.R. at 192a-93a.) When this line of questioning is read together with the portions Employer isolated, it is clear that Claimant's Expert concluded that Claimant's infected laceration caused his angioedema based on Claimant's Expert's history of treating Claimant, his review of Employer's Expert's records, a review of a photograph showing the laceration, his review of the opinions of physicians to which Claimant was referred, and the timing of the injury and onset of the angioedema.

Accordingly, because viewing Claimant's Expert's testimony in its entirety reveals that his opinions were not based on mere possibilities, the equivocal opinions of other physicians, or the mere temporal proximity between the work incident and Claimant developing angioedema, that testimony was not equivocal. Therefore, Claimant's Expert's opinion that, within a reasonable degree of medical certainty, Claimant's leg became infected which, in turn, caused Claimant to develop angioedema, is competent testimony on the issue of causation.

### C. WCJ's Grant of Ongoing Disability Benefits

#### 1. Parties' Arguments

Employer last contends that the Board erred by affirming the WCJ's Decision granting Claimant ongoing disability benefits under the premise of a "possible recurrence." (Employer's Br. at 32.) Employer explains that Claimant's testimony

28

shows that Claimant's alleged disability comes and goes and therefore Claimant is not totally disabled. Employer claims it was error for the WCJ to award total disability to Claimant because "the mere 'possibility of a future recurrence [of a condition] does not constitute a compensable disability.'" (*Id.* (quoting *Swartz v. Workmen's Comp. Appeal Bd. (Dutch Pantry Rest.)*, 543 A.2d 201, 204 (Pa. Cmwlth. 1988)) (alteration in original).)

Claimant responds that the WCJ credited Claimant's and Claimant's Expert's testimony regarding Claimant's ongoing symptoms and the effect those symptoms had on Claimant's ability to work, no objections were lodged regarding that testimony, and Employer's Expert had no firsthand knowledge of Claimant's condition after April 3, 2017. (Claimant's Br. at 16-17.) According to Claimant, because the WCJ's credibility determinations and findings "were based upon the substantial, competent evidence of record, the Board did not err in affirming the WCJ's decision to grant Claimant's Claim Petition and ongoing total disability benefits." (*Id.* at 17.)

## 2. Analysis

Claimants may be considered disabled by a work-related injury despite the resolution of their symptoms "if there is evidence that [the symptoms] are likely to recur once [they] return[] to work." *Schrader Bellows Pneumatics, Div. of Parker-Hannifin Corp. v. Workers' Comp. Appeal Bd. (Earle)*, 711 A.2d 578, 581 (Pa. Cmwlth. 1998). Where claimants "establish that they [are] unfit or unable to perform their duties when they return[ ] to work" by unequivocal medical testimony, ongoing disability can be established. *Id.* However, the mere possibility of a future recurrence is not a compensable injury. *Swartz*, 543 A.2d at 204. In *Swartz*, the claimant argued that she had not recovered from her work-related injury because it

29

could possibly recur in the future. *Id.* The claimant's medical expert testified that the claimant had recovered from her disabling injury, which was caused by exposure to a chemical solution, but opined that "future exposure to [the] allergic chemicals could precipitate further exacerbation" of her condition. *Id.* The Court rejected the claimant's argument and held that "[t]he possibility of a future recurrence does not constitute a compensable disability." *Id.*

Based on the WCJ's findings and credibility determinations, we agree with Claimant that there was no error in granting ongoing benefits. The WCJ "accepted as most credible and convincing the testimony of [C]laimant . . . as well as [Claimant's Expert]." (FOF ¶ 27.) In response to the question of whether Claimant is "disabled for driving tractor-trailer," Claimant's Expert's responded:

> I would consider him disabled, because when he has these flare-ups, they are potentially life-threatening, as the tongue can swell, he can get short of breath, his hands can swell substantially to the point where it does inhibit safe control of steering wheels and reactions times and things like that, in my opinion.

(R.R. at 194a.) Given this testimony, the WCJ found Claimant disabled "from returning to work driving a tractor trailer beginning August 31, 2017[,] and continuing thereafter." (FOF ¶ 27.) Here, in contrast to the situation in *Swartz*, the WCJ did not find that Claimant had recovered from his angioedema and merely **could**, upon some triggering event, experience future symptoms. Rather, the WCJ found that Claimant's symptoms are ongoing and interfere with his ability to drive, and sometimes they are severe enough to be life-threatening. For this reason, Employer's reliance on *Swartz* is misplaced.

### III.    Conclusion

For the foregoing reasons, Claimant satisfied his burden of proving that he sustained a compensable work injury which has resulted in ongoing disability, and, therefore, there was no error in the Board upholding the WCJ's Decision granting the Claim Petition.  Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER,** Judge

31

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Solid Waste Services, Inc., d/b/a :
J.P. Mascaro & Sons, :
     Petitioner :
       :
    v.   : No. 441 C.D. 2020
       :
Workers' Compensation Appeal :
Board (Boos), :
     Respondent :

# **O R D E R**

  **NOW**, March 31, 2021, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

        _____

        **RENÉE COHN JUBELIRER,** Judge